# Illinois Official Reports

## Appellate Court

---

### *People v. McIntosh*, 2020 IL App (5th) 170068

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DALLAS McINTOSH, Defendant-Appellant. |
| District & No. | Fifth District<br>No. 5-17-0068 |
| Filed<br>Rehearing denied | January 30, 2020<br>March 13, 2020 |
| Decision Under Review | Appeal from the Circuit Court of St. Clair County, No. 12-CF-1432; the Hon. Robert B. Haida, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Kathryn B. Parish, of Carlyle Parish, LLC, of St. Louis, Missouri, for appellant.<br><br>James A. Gomric, State's Attorney, of Belleville (Patrick Delfino, Patrick D. Daly, and Sharon D. Shanahan, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BOIE delivered the judgment of the court, with opinion.<br>Justices Barberis and Overstreet concurred in the judgment and opinion. |

**OPINION**

¶ 1    The defendant, Dallas McIntosh, entered into a partially negotiated plea of guilty but mentally ill to the following offenses: aggravated battery with a firearm involving a peace officer (720 ILCS 5/12-3.05(e)(2) (West 2012)), two counts of aggravated discharge of a firearm against a peace officer (*id.* § 24-1.2(a)(3)), unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(e) (West 2012)), and aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1(a) (West 2012)). The circuit court sentenced the defendant to a 40-year term of imprisonment for the conviction of aggravated battery with a firearm involving a peace officer and a 40-year term of imprisonment for each of the two convictions of aggravated discharge of a firearm against a peace officer. It sentenced the defendant to a seven-year term of imprisonment for the conviction of unlawful possession of cannabis with intent to deliver and a six-year term of imprisonment for aggravated fleeing or attempting to elude a peace officer. The court ordered these sentences to run concurrent. The defendant moved to withdraw his plea and requested the circuit court to reconsider his sentences. The circuit court denied these requests. The defendant now appeals his convictions and sentences. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    On September 25, 2012, at approximately 1:49 a.m., Officer Jeffrey Stratman of the Fairview Heights Police Department conducted a traffic stop of a gray 2010 Chevrolet Camaro driven by the defendant. A dash camera (dash cam) from Officer Stratman's squad car recorded the traffic stop. The dash cam video recording showed the defendant activating his turn signal and then immediately changing lanes. The video showed the defendant pulling over after Stratman activated his overhead lights and then showed Officer Stratman approaching the defendant's vehicle. Officer Stratman is heard on the video telling the defendant, "The reason I stopped you tonight, in the State of Illinois you got to signal 100 feet in advance before you are going to make a lane change. You can't just hit the signal and change." Officer Stratman took the defendant's license and returned to his squad car to run a check on the license. During the course of the traffic stop, Officer Stratman filled out a warning ticket for the signal violation. The warning ticket had a checkmark next to a box indicating "failure to signal." At the bottom of the ticket, Officer Stratman also checked a box indicating "other" and wrote "improper signal."

¶ 4    At some point during the traffic stop, a K-9 officer, Jeff Blair, arrived at the scene along with another uniformed patrol officer, Larry Flinn. The dash cam video shows that Officer Blair approached the defendant's vehicle with his dog. The record indicates that the dog alerted positive for the presence of drugs on the passenger side of the Camaro.

¶ 5    The dash cam video shows Officer Stratman walking back to the driver's side of the defendant's vehicle holding a flashlight in front of his chest. He asked the defendant to step out of the vehicle. As the defendant opened the driver's door, he pointed a handgun directly at Officer Stratman and fired one shot at close range. The bullet struck Officer Stratman's flashlight, and shrapnel from the impacted flashlight pierced the officer's hand. The defendant then pointed the handgun at Officer Flinn and fired two shots in his direction. Both shots missed. The officers at the scene returned fire, and the defendant sped away in the Camaro.

¶ 6        Several police officers pursued the defendant through East St. Louis to his parents' home in Centreville, Illinois, where he stopped in the driveway. The officers arrested the defendant in the driveway. Inside the Camaro, the officers recovered two handguns and a purse containing a digital scale and $10,000 in cash. They also recovered a duffel bag containing approximately 3½ pounds of cannabis. The warning ticket that Officer Stratman had prepared was never given to the defendant but was later recovered from Officer Stratman's squad car.

¶ 7        On October 4, 2012, the State charged the defendant with 10 offenses stemming from these events: two counts of attempted first degree murder, one count of aggravated battery, three counts of aggravated discharge of a firearm against a peace officer, one count of armed violence, one count of unlawful possession of cannabis with intent to deliver, one count of aggravated unlawful use of a weapon, and one count of aggravated fleeing or attempting to elude a peace officer. The defendant hired private defense counsel (defense attorney) to provide for his defense. On the request of the defense attorney, Dr. Michael Cuneo evaluated the defendant's fitness for trial. Dr. Cuneo submitted a report finding that the defendant was fit for trial. At a fitness hearing conducted on April 7, 2014, the parties stipulated that Dr. Cuneo would testify consistently with his report, and the circuit court found that the defendant was fit for trial. On September 10, 2014, Dr. Cuneo submitted an amended report in which he opined that the defendant qualified for a plea of guilty but mentally ill.

¶ 8        On September 11, 2014, the parties appeared in court and announced a partially negotiated plea. The defendant agreed to plead guilty but mentally ill to 5 of the 10 counts as follows: aggravated battery with a firearm involving a peace officer, two counts of aggravated discharge of a firearm against a peace officer, unlawful possession of cannabis with intent to deliver, and aggravated fleeing or attempting to elude a peace officer. In exchange for the defendant's plea, the State agreed to dismiss the five remaining charges, which included the two charges of attempted first degree murder. The parties stipulated to Dr. Cuneo's September 10, 2014, report in which he opined that the defendant qualified for a plea of guilty but mentally ill, and the parties stipulated that Dr. Cuneo would testify consistently with his reports if called as a witness. See 725 ILCS 5/115-2(b) (West 2014).

¶ 9        For the offense of aggravated battery with a firearm against a peace officer, a Class X felony, the sentencing range was 15 to 60 years of imprisonment. 720 ILCS 5/12-3.05(h) (West 2012). The parties agreed to a sentencing range of 20 to 45 years of imprisonment. With respect to the two counts of aggravated discharge of a firearm against a peace officer, a Class X felony, the sentencing range was 10 to 45 years. *Id.* § 24-1.2(b). The parties agreed to a sentencing range of 20 to 45 years of imprisonment. The offense of unlawful possession of cannabis with the intent to deliver, a Class 2 felony, had a sentencing range of three to seven years of imprisonment. 730 ILCS 5/5-4.5-35(a) (West 2012). The parties agreed that probation would not be an option for that offense. The offense of aggravated fleeing, a Class 4 felony, had a sentencing range of one to six years of imprisonment. *Id.* § 5-4.5-45(a). The parties agreed that probation would not be an option for that offense. The plea agreement called for the sentences to run concurrently.

¶ 10        At the plea hearing, the circuit court advised the defendant of the charges against him and the possible sentences for the 10 charged offenses. The defendant stated that he understood the possible punishment for each offense. The court advised the defendant that the only part of the plea agreement that it was agreeing to follow was that it would not impose consecutive sentences. The court advised the defendant, "I'm agreeing not to impose a consecutive sentence

and not to impose a sentence of more than 45 years." The court advised the defendant of the constitutional rights he was giving up as a result of his plea. The defendant stated that he understood those rights and wanted to plead guilty but mentally ill.

¶ 11 The State presented the factual basis for the plea, which included a statement by the prosecutor that the defendant was pulled over "for failure to signal when changing lanes." The prosecutor also told the court that Officer Stratman had completed a warning ticket for the defendant's failure to signal. The defense attorney told the court, "we agree with the stipulation as stated by [the prosecutor]." The State also submitted a written stipulation signed by the prosecutor and the defense attorney that stipulated, among other things, that evidence existed beyond a reasonable doubt proving that the defendant knowingly caused injury to Officer Stratman knowing that Officer Stratman was a peace officer performing his official duties. The stipulation also included an agreement that the evidence would prove beyond a reasonable doubt that the defendant knowingly discharged a firearm two times in the direction of Officer Flinn knowing that Officer Flinn was a peace officer engaged in the execution of his official duties.

¶ 12 The court accepted the defendant's plea, finding that the plea was knowingly and voluntarily made and that a factual basis existed to find that the defendant qualified for a plea of guilty but mentally ill.

¶ 13 The circuit court conducted the sentencing hearing on January 29, 2015. At the sentencing hearing, the State played the dash cam video recording of the traffic stop from Officer Stratman's squad car. In addition, the State advised the court that, when considering the defendant's criminal history, it should disregard the defendant's prior conviction for aggravated unlawful use of a weapon because that conviction was unconstitutional under *People v. Aguilar*, 2013 IL 112116. The circuit court agreed.

¶ 14 After receiving evidence relevant to mitigating and aggravating factors and arguments from counsel, the court imposed the following sentences: a 40-year term of imprisonment for the conviction of aggravated battery with a firearm involving a peace officer, a 40-year term of imprisonment for each of the two convictions of aggravated discharge of a firearm against a peace officer, a 7-year term of imprisonment for the conviction of unlawful possession of cannabis with intent to deliver; and a 6-year term of imprisonment for the aggravated fleeing or attempting to elude a peace officer conviction. Consistent with the plea agreement, the court ordered the sentences to run concurrently.

¶ 15 After the sentencing hearing, defense counsel filed a motion to withdraw the plea. Thereafter, the circuit court granted defense counsel's request to withdraw from the case. The defendant then filed a *pro se* motion to withdraw the plea and subsequently hired new counsel (postplea counsel). The defendant's postplea counsel filed an amended motion to withdraw the plea and a motion to reconsider the sentences. The circuit court's denial of the amended motion to withdraw the plea is at issue in this appeal.

¶ 16 As grounds for withdrawing the plea, postplea counsel alleged in the amended motion that the plea was induced by "fraud, false statements, false representation of facts, misrepresentation of facts, fabrication of evidence, and withholding of exculpatory evidence." The motion included allegations that the defendant's original defense counsel was ineffective, that the defendant did not personally agree to the factual basis for the plea, that the defendant was not advised of Dr. Cuneo's limited confidentiality prior to Dr. Cuneo's examination to determine the defendant's fitness, and that the defendant was misinformed about the element

of "in performance of official duties," which was an element of several of the charges to which he pled guilty, including the most serious offenses.

¶ 17     On December 8, 2016, the circuit court conducted a hearing on the defendant's amended motion to withdraw his plea. At the hearing, the defendant testified about the grounds he claimed as a basis for withdrawing his plea.

¶ 18     First, he maintained that, on the night of the traffic stop, he was shot multiple times by the police officers, that he was in a coma, and that he was not expected to live. Therefore, the defendant testified, he did not have any recollection of the details of the traffic stop, including the reason for the stop or where he was located when he was stopped. As a result, he relied on the defense attorney to uncover "the facts so that [he] could make an intelligent decision on how [he] wanted to proceed." He testified that he was told by his attorney that the reason for the stop was that he "had completely failed to signal while changing lanes." He also referred to the grand jury testimony in which a detective, Officer Tim Mueller, told the grand jury that Officer Stratman stopped the defendant for failing to signal when he made a lane change. Accordingly, the defendant told the court that at the time of the plea, he believed that he had failed to signal while changing lanes.

¶ 19     The defendant testified that he saw the dash cam video from Officer Stratman's squad car for the first time at the sentencing hearing and, at that moment, learned for the first time that he did, in fact, signal before changing lanes. He told the court that when his defense attorney accepted the factual basis for the plea, which included the incorrect claim that he had not signaled, he (the defendant) was under a misapprehension of what the facts were concerning the basis for his traffic stop.

¶ 20     On cross-examination, the defendant acknowledged that Officer Stratman can be heard on the dash cam video advising the defendant that the officer made the traffic stop because the defendant failed to signal 100 feet before changing lanes. However, the defendant explained that he did not have an independent recollection of that statement and that, prior to his plea, no one told him that the reason for the stop was the 100-foot travel requirement after signaling and before changing lanes. He testified that the defense attorney told him that he (the attorney) had reviewed the dash cam video and saw that the defendant did not signal before changing lanes. The defendant claimed that he asked the defense attorney to show him the video, but the defense attorney never came to the jail with it. The defendant told the court that he would not have pled guilty had he known that the stop was not for the reasons he was told. He also maintained that the 100-foot travel requirement was not a valid basis for stopping his vehicle.

¶ 21     Second, as another basis for withdrawing the plea, the defendant testified that, when he was evaluated by Dr. Cuneo, neither the court nor Dr. Cuneo advised him whether his conversations with Dr. Cuneo would be confidential. The defendant told the court that he was under the mistaken belief that his statements to Dr. Cuneo could not be used against him and that he did not know the purpose of the examination. He also stated that he never saw Dr. Cuneo's reports prior to his plea or prior to sentencing. On cross-examination, he conceded that Dr. Cuneo's reports were admitted at the sentencing hearing strictly for the purpose of establishing the defendant's qualification to plead guilty but mentally ill.

¶ 22     Third, the defendant testified that, before the plea, no one advised him that his prior conviction for aggravated unlawful use of a weapon was unconstitutional under *Aguilar* and could not be considered as part of his past criminal history at sentencing. He told the court that,

if he had known that his criminal background was less than what he was led to believe, he would not have taken the plea.

¶ 23 Fourth, the defendant testified that, when the State gave the factual basis for the plea, he learned for the first time that Officer Stratman had completed a warning ticket. The defendant told the court that, when he asked his defense attorney about the existence of a warning ticket, the defense attorney told him that the prosecutor must have misspoken because there had been no warning ticket involved. The defendant explained that his lack of knowledge of the existence of a warning ticket was significant because it indicated that he was illegally detained while the K-9 officer conducted a drug sniff. He told the court that the defense attorney should have filed a motion to suppress on this basis, but the attorney never discussed a motion to suppress the stop and subsequent seizure.

¶ 24 Fifth, the defendant testified that he did not understand the nature of the charges against him. Specifically, he claimed that he did not understand the requirement that the officers must be acting in performance of official duties as an element of the offenses of aggravated discharge of a firearm against a peace officer and aggravated battery with a firearm involving a peace officer. The defendant testified that he did not discuss the elements of any offenses with the defense attorney and that the court did not advise him that this was an element of those offenses. The defendant told the court that he incorrectly believed that the mere status of a police officer was all that was required, not that the officer must also be executing his official duties at the time. He believed that, because the traffic stop and the K-9 search were unconstitutional, the officers were not performing official duties when he fired his handgun at them and fled from the scene. The defendant maintained that this was a defense worthy of consideration and justified leave to withdraw his plea.

¶ 25 At the hearing, the State presented the testimony of the defense attorney who represented the defendant up to and during the plea and sentencing hearings. The defense attorney testified that, prior to the plea, he met with the defendant more than 10 times to discuss the evidence in the case, the procedures for trial, and everything involved with preparing the case for trial. The defense attorney stated that his discussions with the defendant included the allegations in the indictment and the elements of every count in the indictment. The attorney told the court that he discussed all the evidence that the State could use to prove the elements of each offense as well as the defendant's possible defenses.

¶ 26 The defense attorney explained that his initial conversations with the defendant raised concerns about psychiatric issues; therefore, the attorney requested Dr. Cuneo and several other doctors to examine the defendant and evaluate his fitness for trial. The defense attorney testified that he went over Dr. Cuneo's reports with the defendant and that he believed that the defendant understood the reports and Dr. Cuneo's conclusion that he was fit for trial. The defense attorney also stated that a self-defense argument was "preferred at one time," but he ultimately concluded that the evidence did not support a self-defense theory. He described the case as "a difficult case to defend."

¶ 27 With respect to the purpose of the traffic stop, the defense attorney recalled that the police officer conducting the stop indicated that he saw the defendant's vehicle in a parking lot and was alerted to it due to crime in the area. The officer's dash cam video, the defense attorney explained, began when the officer started following the defendant. The defense attorney stated that the reason for the stop was "that [the defendant] had not signaled well enough in advance of a turn." The defense attorney believed that the officer's reason for the stop was reference

"to a statute which governs how long you have to signal before you turn rather than make a lane change," and the defendant only made a lane change. The defense attorney believed that the stop was pretextual and that there was a legitimate search and seizure issue stemming from the stop itself.

¶ 28 The defense attorney testified, however, that he did not file a motion to suppress because he was working with the State on a plea deal. In addition, he explained that, based on his legal research, which he shared with the defendant, he concluded that he could not suppress the evidence of the shooting at the officers even if the stop was unconstitutional. Therefore, he did not believe that a motion to suppress would provide the defendant with any defense to the offenses charged. As a result, he felt that it was in the defendant's best interest to negotiate a plea.

¶ 29 The defense attorney told the court that, prior to the plea, he went through all the police reports with the defendant and made him copies of the reports when he requested them. The defense attorney testified, "[A]nd we talked about the evidence. And we sat down, and we watched the video of the traffic stop *** going over what I believed *** the good arguments were and where it all broke down." He recalled an occasion when he was at the jail with his laptop computer and went over the dash cam video with the defendant for at least two hours. He testified that he was "going through the entire video, playing it for him backwards and forwards *** in order to discuss all of the language that was used in the police officer's communications with dispatch in determining whether there [were] good suppression issues." The defense attorney testified that he specifically discussed the turn signal issue as part of the suppression issues that they considered.

¶ 30 The defense attorney testified that, at the time of the plea, he discussed all the defendant's rights with him, including his right to go to trial and the State's burden of proof. He told the court that the defendant understood his rights and elected to accept the State's plea offer and argue for a lesser sentence within the agreed sentencing range.

¶ 31 With respect to the existence of the warning ticket, the defense attorney stated that he had not known whether Officer Stratman had completed the warning ticket but knew from discovery that the officer had intended to issue one. The defense attorney testified that he discussed the issue of an illegal detention if the officer had completed the ticket prior to having the defendant wait for the K-9 to complete a drug sniff. The defense attorney explained that he told the defendant that the State's plea offer was contingent on his waiver of suppression issues.

¶ 32 At the conclusion of the hearing, the court took the motion to withdraw under advisement. On January 17, 2017, the circuit court entered its order denying the defendant's request to withdraw his guilty plea. In the order, the court noted that, at the plea hearing, it had advised the defendant of the charges against him and the minimum and maximum sentence prescribed for each offense charged. The court noted that it explained to the defendant that by pleading guilty he was relieving the State of its burden of proving him guilty beyond a reasonable doubt. The circuit court found that the "record of the plea proceeding further reflects that the plea was voluntary."

¶ 33 The circuit court concluded that the defendant "received more than adequate representation in this matter," noting that the defense attorney testified that he personally viewed the video with the defendant prior to his plea. In addition, the court noted that whether the defendant viewed the video was not significant because the defendant faced a possible sentence of life in

prison[1] if he had been convicted of all the counts contained in the indictment. The court concluded, "It is reasonable, given the nature of the plea negotiations, to conclude that as a matter of trial strategy the defendant abandoned any claim of a fourth amendment violation in exchange for a favorable disposition within the negotiated range of punishment." The defendant now appeals from the circuit court's judgment denying his motion to withdraw his plea.

¶ 34                                   II. ANALYSIS

¶ 35                          A. Motion to Withdraw Guilty Plea

¶ 36    A defendant does not have an absolute right to withdraw his plea. *People v. Hughes*, 2012 IL 112817, ¶ 32. Instead, "[w]ithdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial." *Id.* Whether to grant or deny a motion to withdraw a guilty plea rests in the circuit court's sound discretion. *Id.* An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009).

¶ 37    Here, the defendant does not argue that he was entitled to withdraw his plea because there was doubt as to his guilt. Instead, in substance, his argument is that he should be allowed to withdraw his plea due to a misapprehension of the facts and law and because he was unaware that he had a meritorious defense worthy of consideration. In addition, the defendant argues that the hearing on the motion was deficient because he subpoenaed two witnesses who did not appear and the circuit court improperly did not require their appearance.

¶ 38              1. Misapprehension of Facts and Law/Defense
                          Worthy of Consideration

¶ 39    The defendant has the burden of demonstrating sufficient grounds to allow withdrawal of the plea. *People v. Kokoraleis*, 193 Ill. App. 3d 684, 691-92 (1990); see also *People v. Rutledge*, 212 Ill. App. 3d 31, 33 (1991) ("The defendant always bears the burden of proof in presenting [a motion to withdraw a guilty plea]."). "Where the defendant has claimed a misapprehension of the facts or of the law, the misapprehension must be shown by the defendant." *Delvillar*, 235 Ill. 2d at 520. The misapprehension of law or fact goes to the question of whether the plea was voluntarily and intelligently made. *Rutledge*, 212 Ill. App. 3d at 34.

¶ 40    "To vacate a plea based on a misapprehension of law or fact, the defendant must establish that her mistaken beliefs or impressions were reasonably justified under all the circumstances when those circumstances are judged by an objective standard rather than by the defendant's own subjective impression." *People v. Christensen*, 197 Ill. App. 3d 807, 812 (1990). Absent substantial objective proof that a defendant's mistaken impressions were reasonably justified,

---

[1]Count I of the criminal complaint charged the defendant with attempted first degree murder and alleged sentencing pursuant to section 8-4(c)(1)(D) of the Criminal Code of 2012 (720 ILCS 5/8-4(c)(1)(D) (West 2012)), which provides for a sentence of 25 years up to natural life in prison to be added on to a sentence for attempted first degree murder involving the discharge of a firearm that caused great bodily harm, permanent disability, permanent disfigurement, or death to another person.

a defendant's subjective impressions are insufficient grounds on which to withdraw a guilty plea. *People v. Hale*, 82 Ill. 2d 172, 176 (1980).

¶ 41 The first factual misapprehension the defendant claims concerns the basis for the traffic stop. The defendant claims that he was in a coma after the incident at issue and was unaware of the facts surrounding the initial traffic stop that led to his shooting at the officers conducting the stop. The defendant claims that he was led to believe by his defense attorney and the prosecutor that he failed to signal when he changed lanes. He argues that he learned that he did, in fact, signal before changing lanes for the first time at the sentencing hearing when he saw the video showing him signaling and then immediately changing lanes. He maintains that, had he known this fact prior to the plea, he would not have pled but would have pursued a motion to suppress the evidence against him due to an unlawful traffic stop. The defendant also argues that these facts establish a defense worthy of consideration and that fairness requires that he be allowed to withdraw his plea and pursue this defense. We disagree with the defendant's argument.

¶ 42 This argument concerns a disputed issue of fact, *i.e.*, whether the defendant was aware of the basis of the stop prior to his plea. At the hearing on the motion to withdraw the plea, the State presented evidence that contradicted the defendant's testimony on this factual issue. The defense attorney testified that he discussed the basis for the stop and reviewed the dash cam video of the stop with the defendant at the jail. The video includes audio of Officer Stratman telling the defendant that he stopped him because Illinois law required him to signal 100 feet before changing lanes. The defense attorney further testified that he discussed the turn signal issue with the defendant as part of the suppression issues that they considered.

¶ 43 In the order denying the defendant's request to withdraw his plea, the circuit court noted that the defense attorney testified that he reviewed the dash cam video with the defendant. After considering the defense counsel's testimony, the court concluded that the defendant "received more than adequate representation in this matter." In addition, the court found that the defendant chose to abandon his fourth amendment claims and argue for a favorable sentence within the agreed sentencing range. These factual findings establish that the circuit court concluded that the defense attorney's testimony was credible. For hearings on motions to withdraw guilty pleas, as with most criminal proceedings, the determination of witness credibility rests with the trier of fact. *People v. Mercado*, 356 Ill. App. 3d 487, 497 (2005) (the trial court "bears the burden of assessing the credibility of witnesses who testify at a hearing on a motion to withdraw a guilty plea"). Nothing in the record allows us to second-guess the circuit court's finding with respect to the credibility and weight of the defense attorney's testimony. The circuit court found that the defendant failed to carry his burden of a misapprehension of fact with respect to the turn signal issue, and we cannot reverse that factual determination based on the record before us.

¶ 44 Also, as we stated, in denying the request to withdraw the plea, the circuit court noted that the defendant faced life in prison if he had been convicted of all the counts contained in the indictment. The court therefore concluded, "It is reasonable, given the nature of the plea negotiations, to conclude that as a matter of trial strategy the defendant abandoned any claim of a fourth amendment violation in exchange for a favorable disposition within the negotiated range of punishment." This finding by the circuit court is particularly true because, as the defense attorney testified at the hearing, a motion to suppress would not have provided the

defendant with a defense to any of the charges. The defense attorney testified that he told the defendant this fact prior to his plea.

¶ 45    As the State sets out in detail in its brief, the defendant's argument that he had a meritorious defense stemming from the constitutionality of the traffic stop is based on the "fruit of the poisonous tree" doctrine, which has no application in this case. Under this doctrine, evidence obtained as a result of a violation of the defendant's fourth amendment rights is generally suppressed. *People v. Myles*, 62 Ill. App. 3d 931, 934 (1978). The doctrine is based on the exclusionary rule, which is a judicially created concept designed to safeguard fourth amendment rights. *People v. Winsett*, 153 Ill. 2d 335, 351 (1992).

¶ 46    In the present case, a finding that Officer Stratman's initial stop of the defendant was constitutionally invalid would not result in the suppression of evidence of the shooting or a suppression of any of the evidence the officers recovered after the defendant's arrest. Accordingly, a motion to suppress would not have afforded the defendant any meritorious defense that is worthy of consideration.

¶ 47    As the State explains in its brief, an arrestee has no right to use force to resist an arrest by a known officer, even if the officer is effectuating an unlawful arrest. *People v. Villarreal*, 152 Ill. 2d 368, 374 (1992); *People v. Locken*, 59 Ill. 2d 459, 464 (1974); 720 ILCS 5/7-7 (West 2012). In *People v. Abrams*, 48 Ill. 2d 446, 456 (1971), the supreme court stated that it and the other courts that have developed the exclusionary rule never "contemplated that one who commits an unlawful homicide, assault, or other offense in reaction to an illegal search would be entitled to suppress the evidence of his deed." The supreme court added that use of the exclusionary rule under such circumstances would encourage unlawful and retaliatory conduct against police officers. *Id.* "It would set a policy fundamentally in opposition to a civilized rule of law." *Id.*

¶ 48    Here, regardless of whether the stop of the defendant was constitutional, the defendant committed multiple serious offenses after the stop when he fired a handgun directly at the officers at the scene and sped away in the Camaro. Evidence of the shooting and the fleeing would not have been suppressed had the defendant filed a motion to suppress. Accordingly, we agree with the circuit court that, as the defense attorney testified, it was a matter of trial strategy for the defendant to abandon a futile suppression issue based on a claim of a fourth amendment violation.

¶ 49    In his brief, the defendant argues that there was evidence that the officers' violation of his fourth amendment rights was intentionally unlawful. We are not persuaded by this argument. As the State notes in its brief, the defendant fails to cite any authority that supports this assertion, and our research has not found any to support this argument. This is likely true because the argument would ratify the very type of violent self-help that the supreme court has plainly held violates public policy.

¶ 50    The defendant has failed to establish any arguable facts or basis that would allow the suppression of the evidence that he shot at the officers at the scene of the traffic stop or evidence that he fled the scene after the shooting. He had no meritorious defense based on the suppression of this evidence due to an unconstitutional traffic stop, and his argument otherwise is meritless.

¶ 51    The defendant next argues that, even if the motion to suppress would have had no effect on the State's ability to bring shooting or fleeing charges against him, the recovery of the

weapons and the drugs found in his vehicle could have been suppressed because they were discovered prior to the defendant's illegal reaction to the stop. Again, we disagree.

¶ 52 As the State correctly observes, once the defendant shot at the officers and fled from the scene, the officers had probable cause for his arrest. Upon the arrest, the officers would have authority to impound and search the defendant's vehicle, which would have resulted in the recovery of its contents, including the weapons and the drugs. *People v. Bridgewater*, 235 Ill. 2d 85, 94-95 (2009) ("a vehicle search incident to a recent occupant's arrest is authorized only when: (1) the arrestee is unsecured and within reaching distance of the vehicle's passenger compartment at the time of the search; or (2) officers reasonably believe evidence relevant to the crime of arrest may be found in the vehicle"). Accordingly, the defendant's argument that a motion to suppress would have resulted in the suppression of evidence of the weapons and/or the drugs found in his vehicle has no merit.

¶ 53 The second claim of misapprehension of facts involves the existence of the warning ticket. The defendant argues that, when he pled, he was unaware that Officer Stratman had completed a warning ticket for the turn signal violation. The defendant maintains that the purpose of the stop was completed when Officer Stratman finished filling out the warning ticket. Therefore, the defendant concludes, the traffic stop was illegally extended for the K-9 drug sniff. However, regardless of whether the traffic stop was illegally extended for the K-9 drug sniff, any unlawful detention stemming from the extension would not have justified the defendant shooting at the officers and fleeing from the scene. Therefore, for the reasons explained above, the unlawful detention would not result in the suppression of the defendant's violent response to the officers or the suppression of evidence seized after the defendant was arrested. Also, the record supports the circuit court's finding that the defendant knew of these suppression issues and knowingly abandoned them as a matter of trial strategy during plea negotiations.

¶ 54 Also, we note that the lack of a viable fourth amendment defense defeats the defendant's claim of ineffective assistance of counsel. A court will not find that defense counsel was ineffective for failing to file a meritless motion to suppress. See *People v. Williams*, 147 Ill. 2d 173, 238-39 (1991) ("defense counsel is not required to undertake fruitless efforts to demonstrate his effectiveness"); *People v. Anderson*, 2013 IL App (2d) 111183, ¶ 65 (counsel was not ineffective for failing to file a meritless motion).

¶ 55 The defendant's third claim concerns an alleged misapprehension of law, specifically, an element of proof with respect to several of the offenses to which the defendant pled guilty. The offenses of aggravated battery with a firearm involving a peace officer, aggravated discharge of a firearm against a peace officer, and aggravated fleeing or attempting to elude a peace officer required the State to prove, as an element of the offenses, that a peace officer was engaged in the execution of his official duties at the time of the offenses. The defendant claims that, at the time of his plea, he did not know that this was an element of any of the offenses. He argues that the State could not prove that the officers were acting in the course of their official duties because they knowingly and intentionally engaged in a traffic stop that violated his fourth amendment rights. Again, the defendant's argument is meritless.

¶ 56 Here, we believe that the facts in the record established that the officers were performing their official duties in the execution of the traffic stop when the defendant fired his handgun at them and fled from the scene of the stop. We believe this to be true regardless of the constitutionality of the traffic stop. Therefore, the defendant does not have a defense worthy of consideration based on this claim.

¶ 57    We do not believe that, by using the term "official duties" in defining the offenses at issue, the legislature intended for the State to prove that every aspect of a peace officer's conduct fully complied with fourth amendment jurisprudence. Instead, we hold that, for purposes of the charges at issue here (aggravated battery with a firearm involving a peace officer, aggravated discharge of a firearm against a peace officer, and aggravated fleeing or attempting to elude a peace officer), the constitutionality of the traffic stop is not relevant in determining whether the officers were executing their official duties. Instead, a peace officer is executing his "official duties" when acting in the good faith performance of his job-related duties regardless of whether those actions are later determined to be constitutionally unreasonable. Although our research has not found any direct authority in Illinois on this issue, cases from other jurisdictions interpreting similar statutes support our conclusion: *State v. Mierz*, 901 P.2d 286, 295 (Wash. 1995) (for purposes of Washington aggravated assault statute, term " 'official duties' *** encompasses all aspects of a law enforcement officer's good faith performance of job-related duties"); *Hughes v. State*, 897 S.W.2d 285, 298 (Tex. Crim. App. 1994) (officer acting within "lawful discharge of his official duties" even when he makes an unlawful traffic stop (internal quotation marks omitted)); *State v. Yoshida*, 986 P.2d 216, 218 (Ariz. Ct. App. 1998) ("official duties" for purposes of Arizona aggravated battery statute "encompasses all aspects of a peace officer's good faith performance of his or her job-related duties, even if the officer's actions are later found to be constitutionally unreasonable"); *Robinson v. State*, 814 N.E.2d 704, 708-09 (Ind. Ct. App. 2004) (finding officers' entry into the defendant's home did not comply with the fourth amendment jurisprudence but, nonetheless, finding the evidence supported the jury's verdict that the defendant was guilty of battery of a law enforcement officer, a crime requiring the State show that the officers were "engaged in the execution of [their] official duty" (internal quotation marks omitted)); *Commonwealth v. Biagini*, 655 A.2d 492, 498-99 (Pa. 1995) (affirming a conviction for aggravated assault, in part because the illegality of the arrest did not prevent the State from establishing that the officers were acting "in the performance of duty", as required by that state's statute defining aggravated assault (internal quotation marks omitted)).

¶ 58    None of the cases cited by the defendant establish that Officer Stratman or Officer Flinn were not engaged in their "official duties" as set out in the charged offenses. The officers were on duty, in uniform, and driving marked squad cars. One officer at the scene was accompanied by his K-9 partner. Immediately after encountering the defendant, Officer Stratman informed the defendant why he had been pulled over. At a trial, this evidence would have established that the officers at the scene of the traffic stop were engaged in their official duties regardless of the constitutionality of the traffic stop. Therefore, the defendant has not established a misunderstanding of the law with respect to the "official duties" element of those offenses.

¶ 59    Furthermore, the defense attorney, whose testimony the circuit court found credible, told the court that he discussed with the defendant the allegations against him and the elements of every count in the indictment. He discussed all the evidence that could be used by the State to prove the elements of each offense as well as possible defenses. Based on the record before us, there is no basis for reversing the circuit court's denial of the motion to withdraw the plea based on the defendant's claim of misapprehension of the elements of any of the offenses. The defendant has failed to carry his burden of establishing this alleged misapprehension as a basis for granting leave to withdraw the guilty plea.

¶ 60    Next, the defendant submits that there was a law enforcement conspiracy to hide the basis for the traffic stop, suggesting that the State committed prosecutorial misconduct in presenting testimony at the grand jury proceeding. Specifically, the defendant argues that the State presented to the grand jury false testimony that he failed to signal when he had, in fact, signaled prior to changing lanes. As the State outlines in its brief, the defendant's argument is not persuasive because, as we explained above, the legality of the traffic stop has no bearing on the admissibility of the evidence establishing that the defendant committed numerous criminal acts after the stop. Also, the State accurately points out that the grand jury did not have the power to make legal assessments regarding the constitutionality of a traffic stop. Their task was simply to determine whether probable cause existed for charging the offenses. The defendant makes no argument that the State misled the grand jury regarding the elements of the felony offenses for which the defendant was indicted. The basis of the traffic stop was not an element of any of the offenses charged in the indictment. Accordingly, the defendant established no basis for withdrawing his plea based on the grand jury testimony.

¶ 61    The defendant maintains that he should be allowed to withdraw his guilty plea because he did not personally stipulate to the facts at the plea hearing. The defendant cites Illinois Supreme Court Rule 402(c) (eff. July 1, 2012), but that rule merely states that the court "shall not enter final judgment on a plea of guilty without first determining that there is a factual basis for the plea." There is no statute or rule that requires the defendant personally stipulate to the factual basis for the plea. "[A]ll the trial court need do to comply with the factual basis requirement of Rule 402(c) is to ask the prosecutor to *briefly* describe the evidence the State would be prepared to present if the case went to trial." (Emphasis in original.) *People v. Williams*, 299 Ill. App. 3d 791, 794 (1998). At a plea hearing, after the State describes the evidence, the trial court should then ask defense counsel, and "not the defendant personally," whether he or she agrees that the State had witnesses who, if called, would testify substantially as the State indicated. *Id.* If defense counsel answers in the affirmative, the court has complied with Rule 402(c)'s requirements. *Id.*

¶ 62    In this case, the circuit court fully complied with Rule 402(c). Accordingly, there is no basis for reversing the circuit court's denial of the defendant's request to withdraw his plea due to the defendant not personally stipulating to the factual basis of the plea.

¶ 63    The defendant next argues that he should be allowed to withdraw his plea because of a misapprehension of law. Specifically, he maintains that, prior to Dr. Cuneo's psychological examination to determine his fitness for trial, the circuit court never advised him of the limitations on the use of statements or information gathered during Dr. Cuneo's examination or that he had the right not to cooperate with the examination. See 725 ILCS 5/104-14(c) (West 2012). The defendant argues that, because he was not properly admonished, he made several inculpatory statements during the examination regarding the night of the traffic stop. We disagree with the defendant's argument.

¶ 64    Dr. Cuneo wrote in his report that he advised the defendant of the "limited confidentiality" of his fitness assessment and that the contents of the report would be shared with the prosecutor and the judge. Dr. Cuneo indicated that the defendant understood this and agreed to the interview. Dr. Cuneo ultimately concluded that the defendant was fit to stand trial but qualified for a plea of guilty but mentally ill. The defendant agreed to plead guilty but mentally ill, and no part of the State's evidence as set forth in its factual basis for the plea referred to or relied upon any statements the defendant made to Dr. Cuneo. Accordingly, the error was harmless.

- 13 -

See *People v. Scott*, 148 Ill. 2d 479, 529-30 (1992) (supreme court held that a trial court's failure to comply with section 104-14(c) was harmless).

¶ 65 In the present case, the defendant could have moved to suppress any inculpatory statements had the State sought to utilize them at a trial. However, nothing in the record establishes or suggests that the State's case against the defendant relied on any such statements. We agree with the State that this claimed misapprehension of law under which the defendant supposedly labored had no ultimate bearing on defendant's case. Accordingly, this claim is not a basis for reversing the circuit court's denial of his request to withdraw his plea.

¶ 66 The defendant argues that, due to the circuit court's failure to properly admonish him, he was unaware that he could present a mental health defense despite Dr. Cuneo's findings. As the State points out, however, nothing in the missing admonishments was pertinent to any mental health issues at the time of the crime as described by the defendant in his brief. The admonishment required by section 104-14(c) solely addressed statements made by the defendant in the course of an evaluation of the defendant's fitness to stand trial. It has nothing to do with a defendant's ability to assert any affirmative defense at trial such as insanity. Accordingly, the defendant has failed to establish a basis for reversing the circuit court's denial of his motion to withdraw his plea due to the circuit court's failure to provide section 104-14(c) admonishment prior to Dr. Cuneo's evaluation.

¶ 67 Finally, the defendant argues that he should be allowed to withdraw his plea because, prior to agreeing to the State's plea offer, his defense attorney did not advise him that his prior conviction for aggravated unlawful use of a weapon could not be used against him at sentencing because it was unconstitutional under *Aguilar*, 2013 IL 112116. As noted above, at the sentencing hearing, prior to sentencing, the State advised the court that, when considering the defendant's criminal history, it should disregard his prior conviction for aggravated unlawful use of a weapon because that conviction was unconstitutional under *Aguilar*. The circuit court agreed, and this concession by the State was for the defendant's benefit, not his detriment.

¶ 68 At the hearing on the motion to withdraw the plea, the defendant claimed that, if he had known that his criminal background was less than what he was led to believe, he would not have taken the plea. Instead, he could have tried to negotiate a lower sentencing range. Under the record before us, the defendant has failed to establish that the circuit court abused its discretion in denying his request to withdraw his plea on this basis.

¶ 69 In the context of a motion to withdraw a guilty plea, in order for a defendant to establish that he was prejudiced because of some erroneous advice by counsel (in this case failure to advise about the unconstitutionality of the prior conviction), the defendant must show that there was a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have, instead, insisted on going to trial. *People v. Brown*, 2017 IL 121681, ¶¶ 25-28. A conclusory allegation by the defendant that he would not have entered a guilty plea and would have demanded trial is insufficient to establish prejudice for the purposes of an ineffective assistance of counsel claim. *Id.*

¶ 70 Here, the defendant was originally charged with 10 offenses, including 2 counts of attempted first degree murder, which were dismissed under the terms of the guilty plea. At the hearing on the motion to withdraw the guilty plea, the circuit court recognized that, if the defendant had been convicted of all 10 counts, he would have faced the prospect of spending the rest of his life in prison. Under the plea agreement, however, the most serious offense to

which the defendant pled was aggravated battery with a firearm against a peace officer, a Class X felony, with a sentencing range of 15 to 60 years of imprisonment. As part of the plea agreement, the parties agreed to a sentencing range of 20 to 45 years of imprisonment. The defendant ultimately received a 40-year sentence for the most serious offenses, and quite significantly, all the sentences were ordered to run concurrently. Accordingly, instead of life in prison, the defendant was sentenced to a total of 40 years of imprisonment.

¶ 71 As the State notes in its brief, the defendant "fails to meaningfully explain why knowledge that a single prior conviction could not be used against him altered his decision to avoid the potential of a life sentence following a trial." Nothing in the record suggests that the defendant could have negotiated a lower sentencing range if he had known that his prior conviction for aggravated unlawful use of a weapon would not be considered at sentencing. Therefore, the defendant is unable to show that a decision to reject the plea bargain would have been rational under the circumstances. See *Brown*, 2017 IL 121681, ¶ 52 ("Based on these circumstances, we conclude that defendant has failed to establish the requisite showing of prejudice because he has not shown that a decision to reject his plea bargain would have been rational under the circumstances of his case.").

¶ 72 The defendant has not shown actual innocence or a plausible defense to the charges, and nothing in the record indicates a reasonable probability that defendant would not have pled guilty but for his claimed errors. The defendant has failed to establish that withdrawal of the guilty plea is necessary to correct a manifest injustice. The circuit court's denial of the defendant's motion to withdraw his guilty pleas was not an abuse of discretion and is affirmed.

¶ 73 2. Subpoenaed Witness

¶ 74 The defendant argues that the circuit court abused its discretion in not allowing him to present the testimony of Officer Stratman and Officer Mueller at the hearing on his request to withdraw his plea. The State correctly observes in its brief that nothing in the record establishes that the defendant subpoenaed these witnesses. In addition, the defendant made no offer of proof with respect to what these witnesses would have said if they testified. In addition, to the extent that the officers would testify about the stop, as we have explained in detail above, the legality of the traffic stop was immaterial to the State's ability to prosecute the offenses charged. Accordingly, the defendant has failed to establish that this issue provides a basis for withdrawing his plea.

¶ 75 B. Sentencing

¶ 76 The defendant's final argument is that the circuit court abused its discretion determining his sentences. However, the defendant entered into a partially negotiated plea, and the circuit court sentenced the defendant within the agreed sentencing range. Because we affirm the circuit court's denial of the defendant's request to withdraw his plea, we must affirm the defendant's sentence.

¶ 77 In *People v. Richard*, 2012 IL App (5th) 100302, the court held that contract principles dictated that a defendant who receives the benefit of a bargain with the State in which the State makes sentencing concessions cannot unilaterally obtain reconsideration of the sentence after the court rejects a motion to withdraw the guilty plea. The court held that courts do not have authority to modify a sentence that was entered pursuant to a negotiated guilty plea without first granting a motion to withdraw the negotiated plea. *Id.* ¶ 25; *People v. Johnson*, 2019 IL

122956, ¶ 57. Accordingly, because we must affirm the circuit court's denial of the motion to withdraw the plea, we cannot address the merits of the defendant's sentencing challenge.

¶ 78                                                    CONCLUSION

¶ 79          For the foregoing reasons, we affirm the defendant's convictions and sentences.

¶ 80          Affirmed.