NOTICE

Decision filed 08/12/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 210143-U

NO. 5-21-0143

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Alexander County. |
| | ) | |
| v. | ) | No. 19-MR-41 |
| | ) | |
| FANELLE D. WOODSON, | ) | Honorable |
| | ) | Jeffery B. Farris, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Moore and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's denial of the defendant's motion to withdraw his guilty plea was not an abuse of discretion where the defendant was admonished that his sentence was at the trial court's discretion and could include incarceration, and there was no indication that he had difficulty comprehending the court's admonishments at the plea hearing. The defendant's challenge to his sentence as excessive is moot where his appellate counsel has indicated that he has served the entirety of his sentence.

¶ 2    The defendant, Fanelle D. Woodson, pled guilty to indirect criminal contempt for failing to appear as a witness and was subsequently sentenced to seven years' imprisonment. On appeal, he contends that he should be permitted to withdraw his guilty plea because there was doubt as to his guilt, he has a defense worthy of consideration, and the ends of justice would be served by holding a trial. He also challenges his sentence as excessive. For the following reasons, we affirm.

¶ 3                          I. BACKGROUND

1

¶ 4    On August 5, 2019, the State filed a petition for adjudication of indirect criminal contempt (serious) against the defendant, in which the State indicated that the defendant had been served with a subpoena in relation to Alexander County case No. 19-CF-6 (People v. Warren), directing him to appear in court and testify at the trial on May 14, 2019. Warren had been charged with the first degree murder of Stacy Carter-Gonzalez, and the defendant had given a statement to police indicating that he was present at the time of the shooting. The petition indicated that the defendant failed to appear at the trial and could not be located. Consequently, the State moved to continue the trial, which was subsequently granted by the trial court.

¶ 5    The petition then indicated that, between May 15 and May 28, multiple agencies expended time and resources in an effort to locate the defendant. However, despite these efforts, the defendant was not found before the rescheduled jury trial date of May 28, 2019. The State again moved to continue the trial date, but the trial court denied the State's request. The State then moved to nol-pros the murder charge. In the petition, the State contended that the defendant had knowledge of the subpoena and willfully, knowingly, and contumaciously violated it by failing to appear in court and testify.

¶ 6    The State had also separately charged the defendant with obstruction of justice, a Class 4 felony, for concealing himself with the intent to obstruct Warren's prosecution. 720 ILCS 5/31-4 (West 2018). On September 24, 2019, the defendant pled guilty to serious indirect criminal contempt. In exchange for his plea, the State agreed to dismiss the obstruction of justice charge. There was no agreement as to his sentence.

¶ 7    During the guilty plea hearing, the State indicated that contempt was punishable by fine or imprisonment, there was "no sentencing classification arranged," and it was within the trial court's discretion. The State noted, however, that the sentence was not without limit as it could be limited

2

by the appellate court and that there was "case law on what's an abuse of discretion, what's too much, what's acceptable." The court admonished the defendant as follows regarding the potential penalties: "[T]he possible penalties are basically unlimited. I can imprison you. I can do any number of things. And it will be my ultimate discretion." The court asked the defendant whether he understood that, and the defendant responded, "Yes." The court then noted that the attorneys would make recommendations, but "it will be me who will make the final decision." The court again asked the defendant if he understood, and the defendant responded, "Yes." The court then reiterated, "You can be released, you can be jailed, you can be sent to prison. It will be up to me." The court again asked the defendant if he understood, and the defendant once more responded, "Yes."

¶ 8     The trial court then admonished the defendant concerning the rights he would give up by pleading guilty and questioned him to determine whether the guilty plea was knowingly and voluntarily made. After the State read the factual basis, the trial court accepted the defendant's guilty plea, finding that it was knowingly and voluntarily made with a full understanding of the charge, the possible penalties, and the constitutional rights that the defendant was giving up by pleading guilty.

¶ 9     On March 5, 2020, the trial court, after considering the factors in aggravation and mitigation, sentenced the defendant to seven years' imprisonment. At the sentencing hearing, the court acknowledged the defendant's explanation that he did not appear in court to testify because he had received threats to his life. The court noted that it would not be surprising if the defendant received threats to prevent him from testifying and that it could not say that it did not believe his allegations of threats. However, the court found that a witness's fear of retaliation was not a valid reason for not testifying. After the court imposed the seven-year sentence, it admonished the

3

defendant about his appeal rights. However, the court failed to admonish him that he could file a motion to withdraw the plea and vacate the judgment. The defendant initially did not file any postplea motions following his sentencing hearing. Instead, on March 17, 2020, he filed a *pro se* notice of appeal.

¶ 10     Because the trial court failed to admonish the defendant that he could file a motion to withdraw the plea, the court's admonishments did not comply with Illinois Supreme Court Rule 605(b) (Oct. 1, 2001). Consequently, this court remanded the matter to the trial court for proper Rule 605(b) admonishments and to give the defendant an opportunity to file either a motion to reconsider the sentence or a motion to withdraw the plea and vacate the judgment. *People v. Woodson*, No. 5-20-0108 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 11     Following remand, the defendant was readmonished, and, on August 31, 2020, he filed a motion to withdraw his guilty plea. In the motion, he argued that, at the time he pled guilty, he believed that entering into a plea would result in a sentence of time served. He also argued that he had limited intellectual capacity and cognitive reasoning skills, and he entered into a guilty plea because of a serious misapprehension of the law.

¶ 12     On September 30, 2020, the defendant filed an amended motion to vacate the judgment and withdraw his guilty plea, in which he contended that his guilty plea was not knowing, voluntary, and intelligently made because he had limited cognitive reasoning, had a mental illness, and had a history of chronic alcohol and substance abuse. He also argued that his plea counsel provided ineffective assistance because counsel assured him that, if he pled guilty, he would be sentenced to time served. He further argued that counsel was ineffective because counsel failed to explain to him that the trial court had discretion in sentencing, and in similar cases, there was

4

precedent for a court to impose a sentence of up to 10 years. He contended that he lacked the "wherewithal to understand his right to trial, and the analysis of the strengths and weaknesses of his case." He argued that he entered into the plea based on a misapprehension of the law.

¶ 13    On September 30, 2020, the defendant filed a motion to reconsider, vacate, set aside, or correct judgment or sentence, asking the trial court to resentence him to time served or "time service with probation" with any conditions that the court deemed appropriate and just.

¶ 14    On October 21, 2020, the State filed a response to the defendant's amended motion to vacate the judgment and withdraw plea and a memorandum in support of the response. In the memorandum, the State argued that the defendant had not shown that he lacked the mental capacity to enter into a guilty plea. The State noted that, at the time the defendant entered the plea, he exhibited no signs that he was unfit to enter a plea of guilty, he behaved appropriately, he intelligently answered the trial court's questions, and he did not exhibit any signs of being intoxicated. Also, the State noted that the defendant's plea counsel, who was an experienced criminal law attorney, never indicated any concern about the defendant's mental capacity. Further, although the defendant contended that the presentence investigation report was incomplete as it did not adequately represent his physical and mental limitations, the State noted that it was based on information provided by him to the probation department.

¶ 15    As for the defendant's claims of ineffective assistance of plea counsel, the State contended that the defendant had not provided any evidence that his counsel assured him that he would be sentenced to time served if he pled guilty. However, even assuming that his counsel made this representation, the defendant's reliance on it was not justified as it was made clear, at his plea hearing, that the sentence was within the trial court's discretion, his conviction was punishable by a fine or imprisonment, the possible penalties were unlimited, and the trial court made the ultimate

decision about sentencing. Thus, the State argued that the court made it clear that the sentence did not have to be time served and could be more than that. The State also contended that a sentencing court was not bound by an attorney's recommendation at sentencing, and an incorrect prediction made by counsel was not sufficient to allow withdrawal of a guilty plea. Lastly, the State argued that the defendant failed to demonstrate that he suffered from a misapprehension of law at the time that he pled guilty.

¶ 16    On December 15, 2020, the defendant filed a memorandum in support of his motion to vacate judgment and withdraw plea, in which he argued that the trial court should allow him to withdraw his guilty plea because he misapprehended the law due to his severely limited cognitive ability. He indicated that he suffered severe lead poisoning when he was 18 months old, which caused irreparable damage to his brain; severely impaired his ability to reason, understand complex subjects, and think critically; and impaired his memory function. He also had a psychiatric examination while incarcerated and was diagnosed with "non-specif" psychosis. Thus, he contended that he could not intelligently plead guilty or understand the complexities of an open plea because of his limited cognitive ability. The defendant also argued that his plea counsel, on three different occasions, advised him to plead guilty, and each time told him that, if he pled guilty, he would be sentenced to time served.

¶ 17    On January 6, 2021, the trial court held a hearing on the defendant's amended motion to withdraw his guilty plea. At the hearing, the defendant's father testified about the circumstances surrounding the defendant's ingestion of paint chips that caused him to suffer lead poisoning. He also testified about the defendant's cognitive deficiencies and how the defendant would not ask questions or admit if he did not understand something.

¶ 18    The defendant's mother also testified about the defendant's cognitive deficiencies. She testified that she was present during the defendant's meetings with his plea counsel, and counsel told them that the defendant should get time served if he pled guilty. She then said that counsel said that the defendant would get time served. She testified that she did not believe that the defendant understood the consequences of entering an open plea because of his cognitive limitations. Then, Dr. Victor Wilburn, an expert in early childhood development, testified about the adverse impact of lead poisoning on early childhood development.

¶ 19    On January 6, 2021, the defendant filed his affidavit in support of his motion to withdraw his plea, in which he reiterated that his counsel advised him to plead guilty and told him that he would be sentenced to time served. He indicated that he did not understand that he could be sentenced for up to 10 years for the offense.

¶ 20    On May 7, 2021, the trial court entered an order denying the defendant's motion to withdraw his guilty plea. In the order, the court found that the defendant failed to prove a lack of ability to knowingly, voluntarily, and intelligently enter into a guilty plea because of his alleged limited cognitive reasoning capacity, mental illness, and alcohol and substance abuse at the time of his plea. The court noted that, at no time during the entirety of the proceedings had the defendant's attorneys or the State moved to have the defendant examined for fitness to plead. The court indicated that, based on its own observations, it never questioned the defendant's fitness to plead. The court noted the defendant was clearly able to understand the nature and purpose of the proceedings and assist in his own defense.

¶ 21    The trial court then noted that, at the time the defendant entered his plea, it went to great length to explain the potential consequences of an open plea, including the fact that it would not be limited by the attorneys' sentencing recommendations. The court indicated that limited

intellectual ability, without more, did not render a defendant unfit. The court noted that the defendant's mental health evaluation from the Illinois Department of Corrections indicated that he was oriented, appropriately focused, alert, had clear/coherent thought processes, and unremarkable thought content or behavior. Although the defendant presented evidence of his exposure to lead paint, and the possible effects of lead poisoning, the court noted that he did not present evidence of any professional evaluation that linked the lead poisoning incident to his ability, or lack thereof, to enter into a plea. The court also noted that the defendant did not provide any testimony as to his state of mind at the time he entered his plea.

¶ 22     Also, the trial court concluded that the defendant's guilty plea was knowing, voluntary, and made with a full understanding of the charge that he pled guilty to, the possible penalties, the constitutional rights that he waived by entering the plea, and that the court would not be bound by his counsel's sentence recommendation. The court noted that the defendant's plea counsel was deceased, so it was impossible to discern what conversations she had with the defendant about sentencing alternatives, whether in or out of his mother's presence. The court agreed with the State's assessment that it was unlikely that the defendant's plea counsel ever assured him that his sentence would be time served. It was more likely that she indicated that she would recommend time served as the defendant's sentence. The court concluded that, whether the defendant had a misapprehension of the possible outcome on his own, or based on his attorney's prediction, neither was enough to vacate his conviction and withdraw his plea. The court also concluded that no mistake of law occurred regarding the defendant's potential sentence. Last, the court concluded that the defendant's sentence was justified by his willful and deliberate defiance of the court's subpoena, the seriousness and consequences of the contumacious behavior, the public interest, and the interest in deterrence. The defendant appeals.

8

¶ 23                                    II. ANALYSIS

¶ 24    On appeal, the defendant contends that he should be permitted to withdraw his guilty plea because there was doubt as to his guilt, he has a defense worthy of consideration, and the ends of justice would be served by holding a trial. The defendant also contends that his seven-year sentence was excessive.

¶ 25                              A. Withdrawal of Guilty Plea

¶ 26    A defendant does not have an automatic right to withdraw a guilty plea. *People v. Jamison*, 197 Ill. 2d 135, 163 (2001). Rather, defendant must show a manifest injustice under the facts involved. *Id.* In determining whether to permit defendant to withdraw his plea, the court should evaluate whether the guilty plea was entered through a misapprehension of the facts or of the law, or if there is doubt of the accused's guilt and the ends of justice would be better served by submitting the case to trial. *People v. Pullen*, 192 Ill. 2d 36, 40 (2000). "A defendant should not be allowed to withdraw his plea when the real basis for his withdrawal is that he is dissatisfied with the length of his sentence." *People v. Cunningham*, 286 Ill. App. 3d 346, 349-50 (1997).

¶ 27    The decision whether to permit a defendant to withdraw his plea rests in the sound discretion of the trial court, and the trial court's decision will not be disturbed on review absent an abuse of discretion. *People v. Davis*, 145 Ill. 2d 240, 244 (1991). An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. McIntosh*, 2020 IL App (5th) 170068, ¶ 36.

¶ 28    In this case, in his appellate brief, the defendant argues that his guilty plea should be withdrawn because he has a defense worthy of consideration. Specifically, he contends that the State failed to prove that his absence at court was willful and that his actions were calculated to

9

embarrass, hinder, or obstruct the court in its administration of justice. The defendant notes that a party's mere absence from court, without more, is insufficient to establish intent for the purposes of contempt. He indicates that he did not appear at court and testify at Warren's trial because he was afraid due to the threatening phone calls he had received. He also indicates that he presented substantial evidence concerning his cognitive disabilities that supported his argument that he lacked intent to disrupt the proceedings by failing to appear and testify.

¶ 29 The defendant also contends that the ends of justice would be supported by allowing him to withdraw his guilty plea in light of the severity of his prison sentence and the fact that he did not understand that he could be sentenced for up to 10 years in prison. Also, the defendant indicates that there was evidence presented that showed that he did not actually understand the ramifications of pleading guilty, especially considering his trial counsel's advice and assurance of a sentence of time served.

¶ 30 First, we note that the defendant never asserted that he had a defense worthy of consideration in his motion seeking to withdraw his guilty plea filed in the trial court. He also never made this argument at the hearing on this motion. Thus, he has forfeited this argument on appeal. See Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024) (any issue not raised by defendant in the motion to reconsider the sentence or withdraw the plea of guilty and vacate the judgment is waived). Accordingly, we will not address this argument as a basis for withdrawing his guilty plea.

¶ 31 As for the defendant's remaining arguments, after hearing the evidence concerning his cognitive deficiencies and the testimony from his mother about plea counsel's conversations with her and the defendant, the trial court found that the defendant's plea was knowing, voluntary, and made with a full understanding of the charge that he pled guilty to, the possible penalties, the constitutional rights that he waived by entering the plea, and that the trial court would not be bound

10

by his counsel's sentencing recommendation. The court indicated that, based on its own observations of the defendant at the plea proceedings, it never had a question as to the defendant's capacity to plead guilty. The court noted that the defendant was able to understand the nature and purpose of the proceedings and assist in his own defense. The court also noted that it went to great length to explain the potential consequences to him of entering into an open plea, which included that it would not be limited by the attorney's sentence recommendations and that the sentence was unlimited and could include incarceration.

¶ 32    The trial court recognized the evidence presented concerning the defendant's limited intellectual ability but noted that he did not present evidence of any professional evaluation that linked the lead poisoning incident to his ability, or lack thereof, to plead. He also did not provide any evidence as to his state of mind at the time that he entered the plea.

¶ 33    The trial court found it unlikely that the defendant's plea counsel assured him that he would receive time served if he pled guilty. Instead, the court indicated that it was more likely that time served was discussed in the context of what she would recommend at his sentencing hearing. The court then concluded that any misapprehension that the defendant had about the possible outcome was not enough to vacate his conviction and withdraw his plea. The court further concluded that the sentence was justified by the defendant's willful and deliberate defiance of the court's subpoena, the seriousness and consequences of the contumacious behavior, the public interest, and the interest in deterrence.

¶ 34    Thus, the record demonstrates that, in making its decision to deny the defendant's motion to withdraw his guilty plea, the trial court took into consideration the evidence presented about the defendant's limited cognitive abilities and his understanding that he would receive a sentence of time served based on conversations with his plea counsel. Nothing in the record indicates that the

11

court's decision was an abuse of discretion. Because nothing in the record indicates that the court's decision was an abuse of discretion, we affirm the trial court's denial of the defendant's motion to withdraw his guilty plea.

¶ 35                                B. Excessive Sentence

¶ 36    The next issue is whether the defendant's seven-year prison sentence was excessive. However, the defendant indicated in his reply brief that he was no longer incarcerated and that the issue was now moot because this court cannot grant him the requested relief to either reduce his sentence or remand for resentencing.

¶ 37    A question is said to be moot when no actual controversy exists or where events occur which render it impossible for the court to grant effectual relief. *People v. Lynn*, 102 Ill. 2d 267, 272 (1984). A challenge to the validity of an imposed sentence becomes moot once the entire sentence has been served. *People v. Melton*, 2013 IL App (1st) 060039, ¶ 28. As the defendant has now indicated that he has served the entirety of his sentence, his challenge to this sentence is moot.

¶ 38                                III. CONCLUSION

¶ 39    For the foregoing reasons, we affirm the denial of the defendant's motion to withdraw his plea.


¶ 40    Affirmed.