NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190525-U

NO. 4-19-0525

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 27, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| ADAM CAMPBELL, | ) | No. 18CF143 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Knecht and Justice Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, finding (1) the evidence was sufficient to sustain
defendant's conviction for aggravated battery of a nurse and (2) defendant
forfeited his sentencing challenge and failed to demonstrate, in the alternative,
that counsel rendered ineffective assistance.

¶ 2    Following a bench trial, defendant, Adam Campbell, was convicted of two counts

of aggravated battery (720 ILCS 5/12-3.05(d)(4), (11) (West 2016)), and subsequently sentenced

to 24 months of conditional discharge. Defendant appeals, arguing (1) the State failed to prove

him guilty of one of the counts beyond a reasonable doubt and (2) we must vacate his sentence

and remand for a new sentencing hearing because the trial court sentenced him under the

mistaken belief it imposed the statutory minimum sentence, or, alternatively, counsel was

ineffective for failing to inform the court of the correct sentencing range. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In May 2018, the State charged defendant by information with aggravated battery of a nurse (*id.* § 12-3.05(d)(11)) (count I) and aggravated battery of a peace officer (*id.* § 12-3.05(d)(4)) (count II). Defendant only challenges the sufficiency of the evidence with respect to count I, and we therefore limit our discussion of the evidence presented at trial to that count. Count I alleged defendant "grabbed Kim Kodat about the hand and squeezed, knowing Kim Kodat to be a nurse *** engaged in the performance of her duties as a nurse."

¶ 5        Defendant's case proceeded to a bench trial. We discuss only the testimony of Kim Kodat. Kodat testified that on May 15, 2018, she was employed as a licensed practical nurse assigned to the emergency room of St. James Hospital in Pontiac. At approximately 5 a.m., police officers brought defendant to the emergency room to receive treatment for a head injury. Kodat testified she was wearing "[n]ursing scrubs" at this time and she identified herself to defendant as a nurse. Kodat explained that defendant had sustained an "unknown head injury" and was "highly intoxicated." Defendant initially cooperated with hospital staff but became "very uncooperative" when they attempted to perform a computerized tomography (CT) scan. The technicians were unable to complete the CT scan, so they brought defendant back to the emergency room.

¶ 6        Kodat testified that per hospital policy, an intoxicated patient with head injuries cannot refuse treatment because the patient is unable to discern the extent of his injuries and "if something happened to him and we didn't treat him and just let him go, *** the hospital would be liable." Hospital staff explained this policy to defendant and informed him he could not leave. At this point, "he got aggressive and wanting to leave; and we had to restrain him to our cot per our doctor's order and per our policy when we have somebody like that that we can't control."

Kodat further elaborated that as she and three officers were attempting to hold defendant down and put the restraints on him, "he grabbed my hand or my wrist and wouldn't let go. The officer had to physically remove his hand from mine."

¶ 7        Following presentation of the evidence, the trial court found defendant guilty of both counts.

¶ 8        At defendant's sentencing hearing, the State presented the presentence investigation report (PSI) and no additional evidence in aggravation. According to the PSI, defendant's criminal history consisted of a 2011 Class A misdemeanor for cannabis possession and a 2012 petty offense of public intoxication. The PSI indicated defendant presented a moderate risk to reoffend due to substance abuse issues. As for mitigation, defendant called three witnesses who testified he was not a violent or aggressive person. The State recommended a sentence of 24 months' probation and 180 days in jail, while defendant requested 24 months' conditional discharge with stayed jail time.

¶ 9        Before sentencing defendant, the trial court discussed the applicable mitigating and aggravating factors at length. In mitigation, the court found (1) defendant did not have a significant criminal history, (2) he did not contemplate his conduct would cause serious harm, and (3) his conduct resulted from circumstances unlikely to reoccur. In aggravation, the court found (1) defendant's conduct threatened serious harm and (2) the need for deterrence. After balancing the applicable factors, the court stated the following:

> "THE COURT: Considering all these factors, and I know the State has not argued for DOC time because the statute does tell the Court to start with probation on a felony offense such as this, but I do think given all of these things the more

severe punishment for you at this point is going to be the felony record on your offense.

You know, you've lost your job I think probably because of this case. You now have a felony record. That's going to stay on your record for some time and for somebody who's pretty much a law-abiding citizen, that's going to cause you a lot of problems. You need to find another job, and you're going to be strapped by having this felony conviction on your record. To me, that's a pretty severe punishment for this incident that happened.

So for those reasons, I am going to place you on conditional discharge rather than probation for a period of 24 months."

¶ 10    Defendant filed a motion for a new trial and a motion to reconsider sentence. In the latter motion, he argued his sentence was excessive in light of the mitigating evidence presented at the sentencing hearing. At the hearing on defendant's motions, the following relevant exchange occurred:

"THE COURT: Did you want to argue [the motion to reconsider sentence]?

MR. RIPLEY [(DEFENSE COUNSEL)]: Your Honor, we will argue it; but we would just rest on the motion.

THE COURT: Okay. I'm not sure having found him guilty that there's much lesser sentence that I could impose.

MR. REGNIER: [(ASSISTANT STATE'S ATTORNEY)]: That would be the State's argument, Judge.

THE COURT: So I did impose the minimum sentence. I understand there's the motion for new trial so I appreciate that. But I believe the Court properly considered all of the factors in mitigation and in so doing imposed the minimum sentence required by law. So the motion to reconsider the sentence is denied because I can't impose any lower sentence."

¶ 11          This appeal followed.

¶ 12                              II. ANALYSIS

¶ 13          On appeal, defendant argues (1) the State failed to prove him guilty of aggravated battery of a nurse beyond a reasonable doubt and (2) we must vacate his sentence and remand for a new sentencing hearing because the trial court mistakenly believed it imposed the statutory minimum sentence, or, alternatively, counsel was ineffective for failing to inform the court of the correct sentencing range.

¶ 14                         A. Sufficiency of the Evidence

¶ 15          Defendant argues the evidence was insufficient to sustain his conviction for aggravated battery of a nurse (720 ILCS 5/12-3.05(d)(11) (West 2016)) because the State failed to prove Kodat was performing her duties as a nurse when he grabbed her. According to defendant, to prove Kodat's act of physically restraining him was done in performance of her duties, the State had to show her actions complied with the Nurse Practice Act (Nurse Act) (225 ILCS 65/50-1 *et seq.* (West 2016)) and the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/1-100 *et seq.* (West 2016)). Alternatively, defendant argues the State failed to prove he knew Kodat was performing her duties as a nurse.

¶ 16          When reviewing the sufficiency of the evidence, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

- 5 -

could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We will not set aside a conviction on appeal "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276 (1985).

¶ 17    As stated, defendant argues the State failed to prove Kodat was performing her duties as a nurse when she attempted to restrain him. Defendant cites to *People v. Smith*, 342 Ill. App. 3d 289, 794 N.E.2d 408 (2003), in support of his argument. In *Smith*, the inmate defendant argued the evidence was insufficient to sustain her conviction for aggravated battery of a correctional officer (720 ILCS 5/12-4(b)(6) (West 2000)) because the State failed to prove the officer was performing his official duties at the relevant time. *Smith*, 342 Ill. App. 3d at 290. According to the defendant, the correctional officer called her insulting names, "play[ed] chicken" with her breakfast tray, and threatened to poison her food. *Id.* at 292. In response, the defendant threw a liquid at the officer. *Id.* at 291. On appeal, the defendant argued the correctional officer could not have been performing his official duties because he "was engaged in harassing or provoking [her]." (Internal quotation marks omitted.) *Id.* at 293. This court rejected that argument on the basis the correctional officer was not "engaged *solely* in [his] personal pursuits." (Emphasis in original and internal quotation marks omitted.) *Id.* at 296. Rather, we concluded the officer "committed his provocative acts while performing an actual duty of a correctional officer: delivering breakfast." *Id.*

¶ 18    The State directs our attention to *People v. McIntosh*, 2020 IL App (5th) 170068, 146 N.E.3d 813. In *McIntosh*, the defendant challenged the sufficiency of the evidence related to his conviction for aggravated battery with a firearm involving a peace officer (720 ILCS 5/12-3.05(e)(2) (West 2012)). There, a police officer stopped the defendant for a turn signal

violation. *Id.* ¶ 3. A K-9 officer subsequently assisted with the traffic stop, and his dog alerted for the presence of drugs in the defendant's vehicle. *Id.* ¶ 4. The officers asked the defendant to exit his vehicle, and as the defendant was doing so, he pointed a handgun at the officers and fired multiple shots at them before fleeing. *Id.* ¶ 5. On appeal, the defendant argued the State could not prove the officers were performing their official duties because "they knowingly and intentionally engaged in a traffic stop that violated his fourth amendment rights." *Id.* ¶ 55. The Fifth District found this argument meritless, noting that the legislature, by using the term "official duties" in the statute defining the offense, did not intend to require the State "to prove that every aspect of a peace officer's conduct fully complied with fourth amendment jurisprudence." *Id.* ¶ 57. The *McIntosh* court held that the constitutionality of the traffic stop was not determinative of whether the officers were performing their official duties. *Id.* "Instead, a peace officer is executing his 'official duties' when acting in the good faith performance of his job-related duties regardless of whether those actions are later determined to be constitutionally unreasonable." *Id.*

¶ 19     We find the reasoning in *Smith* and *McIntosh* helpful in the instant case. Those cases demonstrate that the pertinent question is not, as argued by defendant, whether the victim of the battery was acting in strict compliance with the rules and regulations applicable to a specific occupation. The more appropriate question is whether the victim was engaged in the good-faith performance of a job-related duty or solely in her own personal pursuits unrelated to any actual occupational duty.

¶ 20     Here, the State presented sufficient evidence to prove Kodat was performing her duties as a nurse when defendant grabbed her and that defendant knew Kodat was performing her duties. Kodat testified that on the morning in question, she was working in the emergency

- 7 -

room as a licensed practical nurse. She was wearing her nursing scrubs and identified herself to defendant as a nurse. Kodat testified defendant was "highly intoxicated" and had sustained an "unknown head injury." Defendant initially cooperated with hospital staff but became "very uncooperative" when they attempted to perform a CT scan. Kodat testified the hospital had a policy of not allowing intoxicated patients with head injuries to refuse treatment. She explained this policy to defendant and informed him that he could not leave without receiving treatment. However, defendant became aggressive and repeatedly attempted to leave the hospital, so Kodat and several police officers "had to restrain him to our cot per our doctor's order and per our policy." Based on this evidence, a rational fact-finder could conclude Kodat was performing a duty required of her as a nurse when defendant grabbed her; namely, treating an intoxicated patient with a head injury and having to physically restrain him when he became uncooperative and combative. This same evidence was also sufficient to prove defendant knew Kodat was acting as a nurse when he grabbed her hand or wrist.

¶ 21 We find defendant's argument related to the Nurse Act and Mental Health Code unpersuasive. Section 55-30 of the Nurse Act (225 ILCS 65/55-30 (West 2016)) provides, in relevant part, that the scope of a licensed practical nurse's practice is to be directed by a physician. Section 2-108 of the Mental Health Code (405 ILCS 5/2-108 (West 2016)) provides physical restraint may only be applied by a person trained to use the particular type of restraint utilized. Defendant contends the State failed to prove Kodat acted in strict compliance with these provisions and therefore could not have been performing her duties as a nurse at the relevant time. We disagree. Even assuming, *arguendo*, both of these provisions are applicable to Kodat and she failed to strictly comply with them, the evidence was nonetheless sufficient to sustain defendant's conviction. As discussed above, to establish the offense of aggravated battery, the

State is not required to prove the victim was performing his or her duties in strict compliance with the applicable rules or regulations. Instead, the State need only prove the victim was engaged in the good-faith performance of a job-related duty and not solely in his or her own personal pursuits unrelated to any actual occupational duty. See *McIntosh*, 2020 IL App (5th) 170068, ¶ 57; *Smith*, 342 Ill. App. 3d at 296. Here, nothing in the record suggests Kodat was acting in bad faith or in a personal capacity when she attempted to help restrain defendant, in furtherance of treating defendant's head injury, all pursuant to a doctor's order and the hospital's policy. Accordingly, for the reasons discussed, we find the evidence was sufficient to sustain defendant's conviction for aggravated battery of a nurse.

¶ 22                                    B. Sentencing Hearing

¶ 23        Defendant next argues we must vacate his sentence and remand for a new sentencing hearing because the trial court mistakenly believed it imposed the statutory minimum sentence. Specifically, defendant asserts that although the court referred to his sentence of 24 months' conditional discharge as a "minimum sentence," in fact, the minimum allowable sentence was a sentence of conditional discharge not to exceed 30 months. Defendant acknowledges he forfeited this claim because he failed to object in the trial court but asserts we may excuse his forfeiture under the second prong of the plain-error doctrine or, alternatively, because he received ineffective assistance of counsel.

¶ 24                                    1. *Plain Error*

¶ 25        The plain-error doctrine is a "narrow and limited exception" allowing reviewing courts to excuse a defendant's forfeiture of a claim of error. *People v. Hillier*, 237 Ill. 2d 539, 545, 931 N.E.2d 1184, 1187 (2010). To obtain relief under the doctrine, a defendant has the burden of first demonstrating a clear or obvious error occurred. *Id.* If this initial burden is

satisfied, the defendant must next, in relevant part, show "the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.* If either element is not met, "the procedural default will be honored." *Id.* Whether a forfeited claim is reviewable as plain error is a question of law reviewed *de novo*. See, *e.g.*, *People v. Johnson*, 238 Ill. 2d 478, 485, 939 N.E.2d 475, 480 (2010).

¶ 26　　　　Based on his convictions for aggravated battery of a nurse and aggravated battery of a peace officer, both of which are Class 3 felonies, defendant faced a maximum sentence of 2 to 5 years' imprisonment or a minimum sentence of a term of probation or conditional discharge not to exceed 30 months. See 720 ILCS 5/12-3.05(h) (West 2016); 730 ILCS 5/5-4.5-40(a), (d) (West 2016).

¶ 27　　　　Defendant suggests *People v. Hausman*, 287 Ill. App. 3d 1069, 679 N.E.2d 867 (1997), is supportive of his argument. In *Hausman*, this court concluded the trial court committed reversible error at the defendant's sentencing hearing when it misstated both the minimum and maximum sentence before sentencing the defendant to three years' imprisonment. *Id.* at 1072. The defendant in *Hausman* was convicted of a Class 3 felony and faced a sentencing range of two to five years' imprisonment. *Id.* However, at the sentencing hearing, after incorrectly stating the maximum sentence was seven years' imprisonment, the trial court stated, "I am going to impose the minimum sentence of three (3) years in [prison]." *Id.* at 1070-71. In finding the court's clear or obvious error amounted to reversible error under the second prong of the doctrine, we noted that "[a] defendant is entitled to be sentenced by a trial judge who knows the minimum and maximum sentences for the offense." *Id.* at 1071-72.

¶ 28　　　　Unlike in *Hausman*, the record here does not show the trial court committed a clear or obvious error at defendant's sentencing hearing. In *Hausman*, the sentencing court

undeniably misstated the maximum sentence and explicitly stated, incorrectly, it was imposing the minimum sentence. Thus, it was clear the court did not know the proper sentencing range when it sentenced the defendant. In this case, however, it is not clear the trial court was mistaken about the proper sentencing range. The court noted that the State did not request a sentence of imprisonment, and, after highlighting the applicable mitigating and aggravating factors, imposed a sentence of conditional discharge "rather than probation." In sentencing defendant to 24 months of conditional discharge, the court never stated it was imposing the minimum sentence. Indeed, nothing from the sentencing hearing suggests the trial court did not know the correct sentencing range.

¶ 29        Nonetheless, defendant contends the court's statements at the hearing on his motion to reconsider sentence show that the court was in fact clearly mistaken about the correct sentencing range. Specifically, defendant points to the following statement by the court: "I believe the Court properly considered all of the factors in mitigation and in so doing imposed the minimum sentence required by law. So the motion to reconsider the sentence is denied because I can't impose any lower sentence." We cannot say this statement reflects a clear or obvious error by the court. Viewed in light of the court's comment about the State's decision to not recommend imprisonment, and its decision to impose a sentence of conditional discharge "rather than probation," the court may have simply meant that, between imprisonment, probation, and conditional discharge, conditional discharge was the least harsh sentence it could impose. Technically, the court was correct in its statement because a sentence of conditional discharge, as compared with a sentence of probation or imprisonment, *was* the minimum allowable sentence. Simply because the conditional discharge could have been made a shorter duration does not

make the court's statement inaccurate. For these reasons, we find defendant failed to establish clear or obvious error occurred, and we honor his forfeiture.

¶ 30                                    2. *Ineffective Assistance of Counsel*

¶ 31            As an alternative argument, defendant asserts counsel was ineffective for failing to inform the court of the proper sentencing range.

¶ 32            Ineffective-assistance-of-counsel claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984) (adopting the *Strickland* standard). "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767.

¶ 33            Here, because we have found the court did not commit error in stating its understanding of the minimum allowable sentence, as explained above, defense counsel's failure to "correct" the court cannot be considered deficient performance. See, *e.g.*, *People v. Jackson*, 2018 IL App (1st) 150487, ¶ 42, 105 N.E.3d 996 (finding the defendant could not establish his trial counsel was deficient for failing to object where no error occurred).

¶ 34                                    III. CONCLUSION

¶ 35            For the reasons stated, we affirm the trial court's judgment.

¶ 36            Affirmed.