NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210190-U

NO. 4-21-0190

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 9, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| HARRY CASSADY, | ) | No. 12CF15 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney III, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:    When all of the evidence is viewed in a light most favorable to the prosecution, a
rational jury could find, beyond a reasonable doubt, that performing a wellness
check on a reportedly suicidal person was the peace officer's "official duty" within
the meaning of the aggravated battery statute (720 ILCS 5/12-3.05(d)(4)(i) (West
2020)) and that, when defendant battered the peace officer, who was in uniform,
defendant knew that the peace officer was performing this official duty.

¶ 2    In the circuit court of Woodford County, a jury found defendant, Harry Cassady,

guilty of both counts of the information: count I, aggravated battery of a peace officer (720 ILCS

5/12-3.05(d)(4)(i) (West 2020)), and count II, resisting a peace officer (*id.* § 31-1(a)). For count I,

the court sentenced him to imprisonment for five years. For count II, the court sentenced him to

confinement in the county jail for 300 days. Defendant appeals, contending that two of the

elements of aggravated battery were unproven, namely, that, (1) when battered, the peace officer

was performing an official duty and (2) defendant knew that the peace officer was performing an

official duty. Viewing all of the evidence in a light most favorable to the prosecution, we conclude that a rational jury could find those elements of aggravated battery to have been proven beyond a reasonable doubt. Therefore, we affirm the judgment.

¶ 3                                    I. BACKGROUND

¶ 4        Briefly, the evidence in the jury trial tended to show the following.

¶ 5        On January 28, 2020, at about 1:24 a.m., Darren Donald, a patrol officer for Metamora, Illinois, was dispatched to a residence in Metamora because, to quote from Donald's testimony, defendant reportedly was "having suicidal issues." Donald was accompanied by Deputies Jesse Polston and Dan Crowley of the Woodford County Sheriff's Department. All of these police officers were in full uniform.

¶ 6        Donald knocked on the door of the residence, and a friend of defendant's, Michael Somers, came to the door. The police officers explained they were there because of a report that defendant was suicidal. At the police officers' request, Somers went to a bedroom and awakened defendant. When defendant came to the door of the residence, the police officers explained to him that someone had reported he was contemplating suicide. At the police officers' request, defendant came outside. He was loud and belligerent. According to Polston's testimony, defendant appeared to be under the influence of some unknown substance. Defendant was agitated and uncooperative, and he was grinding his teeth. His hands were clenched into fists, and he had a rigid demeanor. His speech was slurred.

¶ 7        Polston explained to defendant that the police officers were there just to check on defendant's well-being. Defendant responded to Polston that it was none of his business, and he demanded that the police go away and leave him alone. Defendant then tried to reenter the residence. Still worried that defendant might try to harm himself, Donald stepped between

defendant and the door, preventing defendant from going back inside. According to the testimony of Donald and Polston, defendant shoved Donald with both hands. The shoving was the basis of count I, aggravated battery of a peace officer (720 ILCS 5/12-3.05(d)(4)(i) (West 2020)).

¶ 8 When Donald, Polston, and Crowley arrested defendant for shoving Donald, defendant physically resisted them, according to the police officers' testimony. They took defendant to the ground. Defendant tensed up, trying to keep his hands underneath him, and he pulled his arms away and back under his body when the police officers tried to handcuff him. Those acts of resistance were the basis of count II, resisting a peace officer (*id.* § 31-1(a)).

¶ 9 II. ANALYSIS

¶ 10 On appeal, defendant challenges only his conviction of aggravated battery of a peace officer. Two of the elements of that offense were that Donald was performing his official duties and that defendant knew Donald was doing so. See 720 ILCS 5/12-3.05(d)(4)(i) (West 2020). In defendant's view, those elements were unproven.

¶ 11 Specifically, defendant makes the following argument. When Donald stood on the porch and prevented him from reentering the residence, Donald made a "non-consensual and forcible entry into a residence, in violation of the Fourth Amendment" (U.S. Const., amend. XIV). Merely stepping onto the porch, in defendant's view, was an intrusion upon the curtilage of the residence and, hence, was an illegal, warrantless entry of the residence. Defendant cites *City of Champaign v. Torres*, 214 Ill. 2d 234, 243-44 (2005), for the proposition that this supposedly unconstitutional entry "cannot be considered an authorized act."

¶ 12 In *Torres*, however, the phrase "authorized act" came from a municipal ordinance forbidding anyone to " 'knowingly resist or obstruct the performance by *** a peace officer *** of any *authorized act* within the peace officer's official capacity.' " (Emphasis added.) *Id.* at 236

(quoting Champaign Municipal Code, art. 2, § 23-21(a) (eff. Apr. 18, 1988)). The statute defining the offense of aggravated battery of a peace officer contains no mention of an "authorized act." Instead, the statute reads as follows:

> "(d) Offense based on status of victim. A person commits aggravated battery when, in committing a battery, other than by discharge of a firearm, he or she knows the individual battered to be any of the following:
>
> * * *
>
> (4) A peace officer ***:
>
> (i) *performing his or her official duties ***.*" (Emphasis added.) 720 ILCS 5/12-3.05(d)(4)(i) (West 2020).

In construing the aggravated battery statute, the appellate court has held, "[A] peace officer is executing his 'official duties' when acting in the good faith performance of his job-related duties regardless of whether those actions are later determined to be constitutionally reasonable." *People v. McIntosh*, 2020 IL App (5th) 170068, ¶ 57. Thus, the constitutionality of Donald's standing on the porch and preventing defendant from reentering the residence is legally irrelevant to the question of whether Donald was "performing his *** official duties." 720 ILCS 5/12-3.05(d)(4)(i) (West 2020). As the appellate court has explained, "the pertinent question" under subsection (d)(4) of the aggravated battery statute (720 ILCS 5/12-3.05(d)(4) (West 2016))

> "is not *** whether the victim of the battery was acting in strict compliance with the rules and regulations applicable to a specific occupation. The more appropriate question is whether the victim was engaged in the good-faith performance of a job-related duty or solely in [his or] her own personal pursuits unrelated to any actual occupational duty." *People v. Campbell*, 2021 IL App (4th) 190525-U, ¶ 19.

- 4 -

¶ 13    When the evidence is viewed in a light most favorable to the prosecution—as we are required to view the evidence—a rational trier of fact could find, beyond a reasonable doubt, that performing a wellness check on someone who reportedly had threatened suicide was an official duty of a police officer. See *id.* ¶ 16. Confirmation of that finding could be found in the fact that police officers from two different law enforcement agencies came to defendant's residence in response to a report that he was suicidal. It would be reasonable to infer that Donald blocked defendant from reentering the residence not because, for personal gratification, Donald wanted to harass defendant but, instead, because Donald, lacking permission to follow defendant into the residence, wanted to talk with him and try to get a sense of whether he really intended to harm himself. Despite defendant's remark to Polston that it was none of Polston's business whether defendant intended to commit suicide, wellness checks by police are so commonplace that, it could be reasonably inferred, defendant knew that the police officers were only doing their job. The fact that Donald was dispatched there was enough to inform defendant that trying to prevent suicide was, evidently, within Donald's job description as a Metamora police officer—or else his employer would not have sent him there.

¶ 14    III. CONCLUSION

¶ 15    For the foregoing reasons, we affirm the circuit court's judgment.

¶ 16    Affirmed.