NOTICE
Decision filed 04/15/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250223-U

NO. 5-25-0223

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 23-CF-792 |
| | ) | |
| CHRISTOPHER L. PAGE, | ) | Honorable |
| | ) | Neil T. Schroeder, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices McHaney and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Where the defendant knowingly and voluntarily pleaded guilty in exchange for an agreed sentence, and his postplea counsel fulfilled all her duties under Rule 604(d), the circuit court properly denied the defendant's motion to withdraw his guilty plea. Because no argument to the contrary would have merit, this court grants appellate counsel leave to withdraw and affirms the judgment of the circuit court.

¶ 2    The defendant, Christopher L. Page, pleaded guilty to four counts of child pornography (720 ILCS 5/11-20.1(a)(2) (West 2020)) and was sentenced to imprisonment for an aggregate term of 32 years. The plea and sentence were in accordance with a fully negotiated plea between the defendant and the State. The defendant filed a motion to withdraw the plea. The circuit court denied the motion, and the defendant now appeals. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks arguable merit, and it has filed a motion to withdraw as counsel and a supporting brief, pursuant to *Anders v. California*, 386 U.S.

1

738 (1967). The defendant has filed a response to OSAD's *Anders* motion. This court grants OSAD's motion and affirms the circuit court's judgment.

¶ 3                                   I. BACKGROUND

¶ 4                                      A. Charges

¶ 5     On April 10, 2023, the State charged the defendant by information with seven counts of child pornography, in violation of section 11-20.1(a)(2) of the Criminal Code of 2012 (720 ILCS 5/11-20.1(a)(2) (West 2020)). It was alleged that on December 11 and 12, 2022, the defendant had disseminated, by computer, seven different video files of child pornography. On April 27, 2023, a grand jury returned a superseding indictment charging those same seven counts. The circuit court appointed the public defender to represent the defendant.

¶ 6              B. An Aborted Plea of Guilty, followed by a Motion to Suppress

¶ 7     On October 25, 2023, the parties appeared before the circuit court, Judge Kyle Napp presiding. The defendant's counsel, special public defender John Stobbs, told the court that the parties had negotiated a plea agreement. Stobbs stated that the defendant would plead guilty to counts 1 through 4, and the court would sentence him to imprisonment on each of those four counts for mandatory consecutive terms that aggregated to 30 years, to be served at 50%, followed by mandatory supervised release (MSR) for 3 years to life. Stobbs added that counts 5 through 7 would be dismissed.

¶ 8     In response to the court's query, the defendant confirmed that his understanding of the agreement was as stated. In response to other queries of the court, the defendant stated that he was 36 years old and had earned some college credits. The defendant also indicated that he knew English; he was not under the influence of any drug, alcohol, or medication that would prevent him from understanding what he was doing; and he did not suffer from any physical or mental

2

condition that would prevent him from understanding what was happening. The court began to admonish the defendant under Illinois Supreme Court Rule 402(a) (eff. July 1, 2012). Then, the court announced that it would be bound by the plea negotiations, and it asked the defendant how he wished to plead, guilty or not guilty, to the four charges. At that point, the defendant requested a recess to speak with counsel, which the court granted.

¶ 9       After the recess, the defendant told the court that he wished to persist in pleading not guilty, and that he wanted a continuance to seek new counsel. The court told the defendant that if he wanted to hire private counsel, he could do so, but if he wanted to remain with appointed counsel, the county's public defender, not the court, would decide which attorney would be assigned to his case. The court continued the cause to a later date. The State revoked its plea offer.

¶ 10      The day after the aborted guilty plea—that is, on October 26, 2023—the defendant filed, by and through special public defender Stobbs, a motion to suppress statements that he had made to police. According to the motion, the defendant was arrested on April 7, 2023, and he made incriminating statements during interviews conducted over the next several hours, in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). "It is [d]efendant's position," the motion read, "that he did not understand *Miranda* warnings which were given to him and that any statements he made were coerced due to the setting and charges." The defendant also filed a motion *in limine*, seeking to bar the admission into evidence of various other statements he had made to police.

¶ 11      On October 31, 2023, the circuit court scheduled the cause for jury trial on December 11, 2023. It scheduled a final pretrial hearing and a hearing on all pending motions for November 28, 2023.

3

¶ 12      C. Negotiated Plea of Guilty and Sentencing

¶ 13 On November 28, 2023, the circuit court, Judge Neil T. Schroeder presiding, called a hearing on all pending motions. The defendant was present and represented by special public defender Stobbs and assistant public defender Trent Cameron. The State described a plea agreement that the parties had reached. Under its terms, the defendant would plead guilty to counts 1 through 4, and the State would nol-pros counts 5 through 7. According to the State, pursuant to the agreement, the court would impose a prison sentence of 8 years on each of counts 1 through 4, which would be mandatory consecutive sentences for an aggregate term of 32 years, to be served at 50%, followed by MSR for 3 years. Defense attorney Cameron assented to the terms described by the State.

¶ 14 Turning to the defendant, the court reviewed the stated terms of the agreement, noting that MSR would be for a minimum of three years and a maximum of natural life. The court asked the defendant whether the agreement, as recapitulated by the court, was the agreement as he understood it, and the defendant answered in the affirmative.

¶ 15 After asking the defendant about his age, schooling, and knowledge of English, the court asked him about his understanding of the courtroom proceedings:

  "THE COURT: Are you under the influence of any drug or alcohol or prescription medication today?

  DEFENDANT PAGE: Just prescription.

  THE COURT: What type of prescription medications are you taking?

  DEFENDANT PAGE: I'm taking Prozac and Depakote, which are antipsychotics.

THE COURT: Is that affecting your ability to understand what's happening here today?

DEFENDANT PAGE: Negative.

THE COURT: So you don't believe that those prescription medications are in any way impacting your judgment or ability to make this big decision in your life today?

DEFENDANT PAGE: No, sir.

THE COURT: Are you suffering from any other physical or mental disability that would prevent you from understanding what we're doing today?

DEFENDANT PAGE: No, sir."

¶ 16    The court proceeded to admonish the defendant as to the nature of the charge in count 1. The court asked the defendant whether he understood the charge, and he answered, "Yes, I do." The court asked the defendant whether he wished to plead guilty or not guilty to that charge, and he answered, "Guilty, sir." The court similarly admonished the defendant as to counts 2, 3, and 4, individually. The court asked the defendant the same questions about his understanding of those charges and how he wished to plead, and the defendant provided the court with the same answers.

¶ 17    The court admonished the defendant about the presumption of innocence and the State's burden of proving guilt beyond a reasonable doubt, and the defendant indicated his understanding. The court admonished the defendant about his right to an attorney, his right to persist in his plea of not guilty, his right to a trial, whether by a jury or by the judge alone, his rights at trial, including his right to confront and cross-examine the witnesses against him, his right to subpoena witnesses, and his right to testify or not testify. The defendant indicated his understanding of all these rights. The court explained to the defendant that if he pleaded guilty, he would be waiving most of the

5

aforementioned rights, and there would not be a trial of any kind on the charges. The defendant indicated his understanding.

¶ 18    The court then admonished the defendant about the penalties for child pornography. The court explained that each count was a Class X felony punishable by imprisonment for 6 to 30 years, followed by MSR for a term of 3 years to life. Because of the age of the child depicted, the court noted, the law required that the sentences be served consecutively. The defendant stated that he understood sentencing. He also stated that he understood that he would be required to register as a sex offender for life.

¶ 19    The State provided a factual basis for the guilty pleas. According to the State, the case against the defendant began when Kik reported to the National Center for Missing and Exploited Children that an account on its platform had been used to disseminate files of child pornography. The defendant admitted, in two separate interviews with police on April 7, 2023, that the Kik account was his. On December 11 and 12, 2022, the defendant disseminated files of child pornography to other users on Kik. Assistant public defender Cameron agreed that the State's evidence would be substantially as stated in the factual basis.

¶ 20    The court asked the defendant whether anyone had forced or threatened him into pleading guilty, and the defendant answered, "Negative, Your Honor." The court asked him whether anyone had promised him anything, apart from the plea negotiations, in order to persuade him to plead guilty, and the defendant answered, "Just the plea negotiations." The court asked the defendant, "Are you entering in to these four pleas freely and voluntarily?" The defendant answered, "Yes, Your Honor." The court asked the defendant whether he had discussed these pleas with his attorneys Cameron and Stobbs, and the defendant answered, "I did, Your Honor."

¶ 21    The court found that the defendant understood the charges against him, his rights, and the possible penalties, and that he knowingly and voluntarily waived his right to a trial and pleaded guilty. Satisfied that there was a factual basis for the pleas, the court accepted the pleas and entered judgment thereon. The parties waived a presentence investigation report.

¶ 22    In accordance with the plea agreement, the court imposed a sentence of 8 years of imprisonment on each of the four counts, to be served consecutively, for an aggregate sentence of 32 years, at 50%, plus MSR for 3 years to life. The other counts against the defendant were dismissed. The court asked the defendant whether he received the sentence for which he had negotiated, and the defendant answered, "Yes, Your Honor." The court asked the defendant whether he understood the sentence, and he answered, "I understand the sentence in its entirety."

¶ 23    Finally, the court admonished the defendant about his right to appeal, which the defendant stated he understood. The court entered a written judgment and sentence.

¶ 24                    D. *Pro Se* Motion to Withdraw Guilty Plea

¶ 25    On December 21, 2023, the clerk of the circuit court file-stamped a handwritten two-page letter, dated December 17, 2023, from the defendant to Judge Schroeder. In the letter, the defendant sought to "withdraw [his] plea deal and proceed to trial with new private counsel." As grounds for withdrawing the plea, the defendant stated that Stobbs had provided him with ineffective assistance by, *inter alia*, "failing to challenge admissibility of confession due to being tainted by illegal siezure [*sic*] without probable cause for the purpose of illiciting [*sic*] an incriminating statement." On December 28, 2023, the clerk file-stamped the defendant's *pro se* motion to withdraw guilty plea, which incorporated in its entirety the defendant's December 17, 2023, letter to Judge Schroeder.

¶ 26    On March 14, 2024, the circuit court held a hearing on the defendant's request for the appointment of postplea counsel. The court appointed special public defender Donna Polinske as postplea counsel.

¶ 27    On May 15, 2024, the clerk file-stamped a 14-page, handwritten letter, dated April 10, 2024, from the defendant to Judge Schroeder. The letter was written "[i]n an effort to amend" his *pro se* motion to withdraw guilty plea. The defendant stated, *inter alia*, that he pleaded guilty under "duress" caused by attorney Stobbs, and that Stobbs was ineffective for failing to amend the motion to suppress statements so as to claim that those statements were the fruit of an unlawful arrest of the defendant in violation of the fourth amendment. The defendant claimed that the unlawful arrest was a pretext for the interrogation of the defendant. The arrest occurred on April 7, 2023, at approximately 6 a.m., when the defendant was served with a search warrant at his home. Police immediately took him to Alton police headquarters. He claimed that the arrest was without a warrant or probable cause. "The impropriety of the arrest was obvious," the defendant asserted. The defendant relied on *Brown v. Illinois*, 422 U.S. 590 (1975), where the United States Supreme Court held that the giving of *Miranda* warnings is not the sole factor to be considered when determining whether a confession was obtained by exploitation of an illegal arrest. *Brown*, 422 U.S. at 603-04.

¶ 28             E. Counsel-Amended Motions to Withdraw Guilty Pleas

¶ 29    On June 21, 2024, the defendant, by and through postplea counsel Polinske, filed an amended motion to withdraw guilty plea, amending his *pro se* motion. On June 24, 2024, postplea counsel filed a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024).

¶ 30 On March 19, 2025, the defendant filed, through postplea counsel, the motion at issue in this appeal—a second amended motion to withdraw the defendant's guilty plea. The second amended motion incorporated the defendant's *pro se* motion to withdraw guilty plea. In addition, the second amended motion alleged that the defendant's guilty plea was an involuntary plea due to (1) the defendant's "mental issues as evidenced by the prescribed medications he was taking the date of the plea," (2) the illegality of his arrest, and (3) the ineffective assistance provided by his counsel, for various specified acts or omissions, including pressuring him to plead guilty "without investigating the charges."

¶ 31 The second amended motion was accompanied by a one-page handwritten affidavit from the defendant, dated March 17, 2025. The defendant asserted that (1) on September 20, 2023, his attorney had "pressured" him into pleading guilty without even investigating the charges, or reviewing the discovery relating to forensic evidence, "or filing any motions relevant to [his] defense"; (2) on October 26, 2023, his attorney "filed obstructing motions that knowingly limited the chances of suppressing evidence from [April 7, 2023] by failing to acknowledge a 4th amendment violation claim"; (3) in the time leading up to his final pretrial hearing, his attorney "failed to amend the motion for suppression of [April 7, 2023] evidence"; and (4) on November 28, 2023, his attorney "affirmed he would not investigate further claims or a relevant landmark case by the Illinois Supreme Court," and the attorney also advised the defendant that his "best option" was to accept the plea offer.

¶ 32 Also on March 19, 2025, postplea counsel Polinske filed another certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024). She certified that (1) she had "consulted with the [d]efendant in person, by mail, by phone or by electronic means to ascertain the [d]efendant's contention of error in entry of the plea of guilty and in the sentence"; (2) she had

9

"examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing"; and (3) she had "made any amendments to the motion necessary for adequate presentation of any defects in those proceedings."

¶ 33    F. Hearing on Second Amended Motion to Withdraw Guilty Plea

¶ 34    On March 19, 2025, the circuit court called a hearing on the defendant's second amended motion to withdraw guilty plea. The defendant was present with appointed postplea counsel Polinske.

¶ 35    The defendant testified on his own behalf, as the sole witness for the defense. He testified that on October 25, 2023, he came to court for the purpose of pleading guilty in exchange for a sentence of 30 years at 50%. Before court began, though, he told Stobbs that he was "reluctant to go forward." The reason for his reluctance was that the discovery in his case was "missing a key piece." Specifically, the discovery did not include a forensic report on the defendant's various electronic devices that allegedly held child pornography. The defendant had never been informed of the results of a forensic examination of his devices. He had never even been informed that the forensic results were in. After the plea hearing began, when the judge asked whether he pleaded guilty or not guilty, the defendant requested a recess in the proceedings. During that recess, the defendant spoke with attorney Stobbs. After that conversation, the defendant "made a final decision not to go forward with [his] plea" due to his not knowing what the forensic report would show. Sometime after the aborted guilty plea of October 25, 2023, the defendant spoke with an attorney in the public defender's office, Trent Cameron.

¶ 36    The defendant also testified that on November 13, 2023, during a visit with Stobbs at the county jail, the defendant was shown a forensic report, dated November 10, 2023. According to the defendant, the forensic report showed that on each of the electronic devices that had been

10

confiscated from him, no evidence of the charged offenses was found, or only "inconclusive" evidence was found. After examining the forensic report, the defendant asked Stobbs to file an amended motion to suppress evidence, and he brought up "additional cases" that he wanted the court to know about before proceeding with his case.

¶ 37    The defendant recalled that on November 28, 2023, he arrived in court for his final pretrial. He saw assistant public defender Cameron there, along with Stobbs. On that date, the defendant was experiencing mental-health issues and was taking Prozac, an antidepressant and antianxiety medication, plus a medication for sleep. His mental faculties "were limited or at least diminished" as a result of those medications, although he did know where he was, and he could identify the other people in the courtroom. During his conversation with Stobbs, the defendant "gave notice" that he was experiencing post-traumatic stress disorder symptoms, *i.e.*, anxiety and depression.

¶ 38    The defendant further testified that while he was in court on November 28, 2023, he briefly discussed with Stobbs the "additional motions" that he wanted filed, and he asked Stobbs "to investigate those issues." One of the motions the defendant sought was a motion to suppress his statements to police, based on the illegality of his arrest, which was illegal due to the fact that no incriminating evidence was found on any of the defendant's devices that were seized on the day of his arrest. Those issues, the defendant stated, were set forth in his *pro se* motion to withdraw plea and in the amended motions. As a result of Stobbs's not raising those issues, the defendant thought that he was "not able to have a valid defense" at trial. The defendant would not have pleaded guilty if Stobbs had filed the motions that he had requested. He had repeatedly emphasized that "there was no *** forensic evidence that could be used against him," but his protestations seemed to fall on "deaf ears." Despite the absence of any incriminating forensic evidence on any of his devices, the defendant nevertheless pleaded guilty on that day. He pleaded guilty "because

11

[Stobbs] was not raising the issue that [he] had asked for in regard to the sequence of event[s] that took place the date of [his] arrest," as set forth in his motion to withdraw guilty plea and in the amended motions.

¶ 39    On cross-examination by the State, the defendant stated that he had reviewed the motion to suppress statements, previously filed by attorney Stobbs, and he acknowledged that the motion addressed his arrest and his statements to police. Nevertheless, the defendant was dissatisfied with that motion because "it did not address the issue of a Fourth Amendment violation." The defendant also admitted to being aware that on November 28, 2023, he was in court for a scheduled hearing on his motion to suppress, any pending motions *in limine*, and a final pretrial.

¶ 40    The State called, as its sole witness, attorney Stobbs. Stobbs testified that he had a private law practice, but he also served as a special public defender. In early October 2023, he began work on the defendant's case and engaged in plea negotiations.

¶ 41    According to Stobbs, the defendant was set to appear in court on October 25, 2023, in order to plead guilty pursuant to a negotiated plea agreement with the State. However, the defendant told Stobbs that he had changed his mind about pleading guilty because the agreement required him to serve "too much time" in prison. He told Stobbs that he wanted a trial. He did not say anything about wanting to have a motion to suppress filed.

¶ 42    Stobbs also testified that on October 26, 2023, the day after the defendant's aborted plea of guilty, he filed a motion to suppress the defendant's statements, which included two confessions, as well as motions *in limine*. Sometime after the aborted plea, Stobbs recalled the defendant's requesting a different attorney. Fearing that he and the defendant were not "get[ting] along for whatever reason," Stobbs arranged for assistant public defender Trent Cameron to speak with the defendant about his case, and Cameron spoke with the defendant "at least once at the jail."

12

¶ 43 In mid-November 2023, Stobbs received a forensic report through discovery in the defendant's case. He identified State's exhibit A as a copy of that forensic report. Stobbs recalled that the seven Class X charges against the defendant involved disseminating media over two electronic service platforms, Kik and Snapchat. However, according to Stobbs, none of those seven counts was based on evidence found on the devices seized from the defendant's person or residence. According to Stobbs, the report did not state that no incriminating evidence was found, nor did it state that the evidence was inconclusive, or anything else along those lines. Stobbs reviewed the forensic report with the defendant. Stobbs did not recall that the defendant ever said that there was no forensic evidence against him or that the forensic evidence was inconclusive. If the defendant ever had such an impression, he did not get it from the report itself or from Stobbs. At any rate, Stobbs stated, the forensic report was "not something that moved the needle" in terms of the defendant's deciding how he would plead.

¶ 44 Stobbs further testified that he filed a motion to suppress statements because of the defendant's two confessions to police. Nothing in the forensic report changed that plan, and nothing in the report necessitated alteration of his motion to suppress. Stobbs explained that, in his experience, Madison County allowed for "pretty broad" motions to suppress statements. He expected that at a suppression hearing, he would have been able to attack the statements very broadly, and even if he had not been permitted to do so, he could have filed a supplemental motion to suppress statements.

¶ 45 Stobbs further testified that on November 28, 2023, the case was scheduled for a hearing on the defendant's motion to suppress statements, the defendant's motions *in limine*, and the State's motions *in limine*, and for a final pretrial. However, the defendant pleaded guilty on that date. Before pleading guilty, though, the defendant met with attorney Cameron privately, and

13

Stobbs thought that the defendant had met privately with him, as well. The defendant was not rushed on that date. To Stobbs, the defendant did not appear to be under the influence of any medication that affected his ability to communicate or his ability to understand that which was happening in court. Nothing about the defendant caused Stobbs to think that the defendant should not proceed with his plea. If Stobbs "thought for a second that [the defendant] wasn't able to understand what was going on," he would have sought to continue the case. Stobbs denied coercing or pressuring the defendant into accepting the plea offer. He described the defendant as "smart" and "nice" and described their relationship as "very good."

¶ 46     The "digital forensics report" in the defendant's case (Exhibit A), which was admitted into evidence over the defendant's objection, was 11 pages in length. It was authored by Jim Stapleton, a digital forensics examiner supervisor. According to the report, Stapleton examined an Apple laptop computer and other electronic devices. The login screen of the laptop displayed the user "Christopher Page." Stapleton extracted the laptop's data using Cellebrite technology and searched the data for "child notable images and videos." He found "twenty cached child notable images."

¶ 47     The circuit court, in ruling on the defendant's second amended motion to withdraw guilty plea, referred to the transcript of the defendant's aborted plea hearing before Judge Napp on October 25, 2023. The court stated that the transcript showed that the defendant was "well aware of his rights and was able to assert them" when he chose. Clearly recalling the day of the defendant's completed plea of guilty, the court also recalled "[the defendant], his mannerisms and conduct." The defendant's demeanor on the day of his guilty plea was "exactly the same" as his demeanor on the day of the hearing on his motion to withdraw his guilty plea. There was no evidence that the defendant's mental faculties were diminished in any way on the day of his guilty plea. While being admonished pursuant to Illinois Supreme Court Rule 402, the defendant

14

responded appropriately to all the court's questions. There was nothing to indicate "anything but a voluntary, intelligent, and knowing plea of guilty." There was no manifest injustice in the plea. The court entered a written order denying the defendant's second amended motion to withdraw plea.

¶ 48    On behalf of the defendant, the circuit clerk filed a timely notice of appeal. The circuit court appointed OSAD to represent him in the appeal.

¶ 49                                    II. ANALYSIS

¶ 50    This appeal is from the circuit court's denial of the defendant's second amended motion to withdraw guilty plea. "[T]he decision to grant or deny a motion to withdraw a guilty plea rests in the sound discretion of the circuit court and, as such, is reviewed for abuse of discretion." *People v. Hughes*, 2012 IL 112817, ¶ 32. "An abuse of discretion will only be found where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Burge*, 2021 IL 125642, ¶ 37.

¶ 51    In the brief that accompanies OSAD's *Anders* motion to withdraw as counsel, OSAD presents three potential issues that could be raised in the instant appeal. The first of these potential issues is whether the defendant's plea of guilty was unknowing or involuntary. A defendant's plea of guilty comports with due process only if the record affirmatively shows that the plea was knowingly and voluntarily made. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). This rule stems from the fact that a plea of guilty represents a waiver of constitutional rights, including the right to a trial by jury and the right to confront one's accusers. *Id.* at 243.

¶ 52    In order to ensure compliance with the requirements of *Boykin*, our supreme court adopted Rule 402. *People v. Wills*, 61 Ill. 2d 105, 111 (1975). Rule 402, and therefore due process, is satisfied if the circuit court "substantially" complies with the rule. *People v. Fuller*, 205 Ill. 2d

308, 323 (2002). The question of whether the court substantially complied with Rule 402 is a legal question that this court reviews *de novo*. *People v. Hall*, 198 Ill. 2d 173, 177 (2001).

¶ 53 Under Rule 402(a), a court shall not accept a guilty plea "without first, by addressing the defendant personally in open court," informing him of, and determining that he understands, (1) the nature of the charge against him; (2) the minimum and maximum sentence he faces, including the penalty he faces due to prior convictions or consecutive sentences; (3) that the defendant has a right to persist in his plea of not guilty or to plead guilty; and (4) that if he pleads guilty, there will not be a trial of any kind, so that by pleading guilty he waives the right to a jury trial and the right to be confronted with the witnesses against him. Ill. S. Ct. R. 402(a) (eff. July 1, 2012).

¶ 54 Under Rule 402(b), a court shall not accept a guilty plea "without first determining that the plea is voluntary." Ill. S. Ct. R. 402(b) (eff. July 1, 2012). If the defendant pleads guilty pursuant to a plea agreement with the State, "the agreement shall be stated in open court. The court, by questioning the defendant personally in open court, shall confirm the terms of the plea agreement *** and shall determine whether any force or threats or any promises, apart from a plea agreement, were used to obtain the plea." *Id.*

¶ 55 A thorough summary of the defendant's guilty-plea hearing of November 28, 2023, is found above. The summary elucidates that the circuit court did not accept the defendant's guilty pleas before it had admonished him as to each of the four items mentioned in Rule 402(a) and had determined that he understood each of those items. To say the least, the court substantially complied with Rule 402(a). Also, the summary of the guilty-plea hearing makes clear that the court did not accept the defendant's guilty pleas until the plea agreement had been stated in open court and the defendant had confirmed the agreement's terms. Through its careful questioning of the

16

defendant, the court determined that no force or threats or any promises, apart from a plea agreement, had been used to obtain his guilty pleas. The defendant's pleas of guilty were knowing and voluntary. No argument to the contrary would have merit.

¶ 56    The defendant's valid plea of guilty also wrecks his postplea claim that attorney Stobbs provided ineffective assistance by not filing a motion to suppress statements on the grounds of a fourth amendment violation. "[A] voluntary guilty plea waives all nonjurisdictional errors or irregularities, including constitutional ones." *People v. Townsell*, 209 Ill. 2d 543, 545 (2004).

¶ 57    The second potential issue presented by OSAD in its *Anders* brief is whether the circuit court erred in denying the defendant's motion to withdraw guilty plea. Whether to grant or deny a motion to withdraw guilty plea rests in the circuit court's sound discretion. *People v. McIntosh*, 2020 IL App (5th) 170068, ¶ 36. This court reviews the denial of such a motion for an abuse of that discretion. *People v. Manning*, 227 Ill. 2d 403, 411-12 (2008). A ruling represents an abuse of discretion if it is arbitrary, fanciful, or unreasonable, or if no reasonable person would take the view of the circuit court. *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009).

¶ 58    Leave to withdraw a guilty plea is not granted as a matter of right, but only if it is necessary to correct a manifest injustice under the facts involved. *People v. Hillenbrand*, 121 Ill. 2d 537, 545 (1988). The defendant bears the burden of demonstrating the necessity of withdrawing his plea. *People v. Ferral-Mujica*, 2017 IL App (2d) 160240, ¶ 22. Leave should be granted if it appears that (1) the plea was entered based upon a misapprehension of the law or the facts, (2) there is doubt as to the defendant's guilt, (3) the defendant has a meritorious defense, or (4) the ends of justice will be better served by subjecting the case to trial. *People v. Davis*, 145 Ill. 2d 240, 244 (1991). "For hearings on motions to withdraw guilty pleas, as with most criminal proceedings, the

determination of witness credibility rests with the trier of fact," *i.e.*, with the circuit court. *McIntosh*, 2020 IL App (5th) 170068, ¶ 43.

¶ 59 As previously discussed, the record plainly shows that the defendant knowingly and voluntarily entered his guilty pleas. At the guilty-plea hearing on November 28, 2023, the court substantially—indeed, thoroughly—admonished him under Rule 402(a) and (b), and the court then determined that the pleas were knowing and voluntary. The defendant, at the time of his plea, understood the offenses to which he was pleading guilty, understood his rights, and understood that by pleading guilty, he was waiving his rights in exchange for a specific aggregate sentence. The defendant also explicitly stated that his prescription medications did not impair his ability to understand the courtroom proceedings or to make an important decision. At the March 19, 2025, hearing on the defendant's motion to withdraw plea, the defendant's plea counsel testified that the defendant, on the date of his plea, showed no signs of being incapable of understanding the courtroom proceedings or continuing with his plea. The court found no reason to think that the defendant's mental faculties were impaired in any way at the time of his plea. The court was free to make that finding, and nothing in the appellate record allows this court to second-guess it.

¶ 60 At the hearing on the motion to withdraw plea, the defendant testified that he would not have pleaded guilty but for his attorney's failure to file a motion to suppress statements that raised a fourth amendment issue. The defendant wanted to seek suppression of his statements to police on the grounds that his police interrogation, during which he made those statements, was the result of an unlawful search. However, attorney Stobbs had already filed a motion to suppress the defendant's statements to police. The defendant was aware of that motion to suppress. As Stobbs testified at the hearing on the motion to withdraw plea, he was free to raise that fourth amendment rationale at a suppression hearing; he did not need to file a separate motion to suppress raising that

18

rationale. The cause was set for a hearing on the motion to suppress statements on November 28, 2023. The suppression hearing would have proceeded on that date, if it had not been for the defendant's choosing to plead guilty. No manifest injustice was committed in denying the defendant's second amended motion to withdraw guilty plea.

¶ 61    The third, and final, potential issue presented by OSAD is whether postplea counsel failed to comply with Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024). Counsel must strictly comply with each provision of Rule 604(d). *People v. Gorss*, 2022 IL 126464, ¶ 19; *People v. Janes*, 158 Ill. 2d 27, 33 (1994). Failure to comply requires remand for the filing of a new postplea motion and for a new hearing on the motion. *Gorss*, 2022 IL 126464, ¶ 19. While strict compliance does not require that counsel's certificate recite the rule verbatim, it must indicate that counsel performed the required duties. *People v. Richard*, 2012 IL App (5th) 100302, ¶ 10. Whether counsel strictly complied with Rule 604(d) is an issue this court reviews *de novo*. *Gorss*, 2022 IL 126464, ¶ 10.

¶ 62    The purpose of Rule 604(d) is to ensure that, before an appeal is taken from a guilty plea, the judge who accepted the plea may learn of and correct any improper conduct or errors that may have produced the plea. *Id.* ¶ 15. "The certification requirement furthers this purpose by enabling the circuit court to ensure that counsel has reviewed the defendant's claim and considered *all* relevant bases for the motion to withdraw the guilty plea or to reconsider the sentence." (Emphasis in original and internal quotation marks omitted.) *Id.*

¶ 63    Rule 604(d) requires an attorney to (1) consult with the defendant, whether by phone, mail, electronic means, or in person, in order to ascertain the defendant's contentions of error in the entry of the plea of guilty or in the sentence, (2) examine the trial court file and both the report of proceedings of the guilty plea and of the sentencing, and (3) make any amendments to the postplea

19

motion that are necessary for an adequate presentation of any defects in those proceedings. Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024).

¶ 64 Here, the defendant's postplea counsel filed, on March 19, 2025, a Rule 604(d) certificate that closely tracked the language of the rule itself. A facially compliant Rule 604(d) certificate creates a presumption of compliance with the rule. *People v. Diaz*, 2021 IL App (2d) 191040, ¶ 23. Nothing in the record on appeal rebuts this presumption that counsel fulfilled all her duties under Rule 604(d). *Id.* (the presumption of compliance created by a facially valid Rule 604(d) certificate may be rebutted where the record affirmatively demonstrates counsel's failure to fulfill her duties under the rule).

¶ 65                                III. CONCLUSION

¶ 66 The defendant's pleas of guilty to child pornography were knowing and voluntary. The circuit court did not err in denying the defendant's second amended motion to withdraw those pleas. No argument to the contrary would have merit. Accordingly, this court grants the defendant's appellate counsel leave to withdraw and affirms the judgment of the circuit court.


¶ 67 Motion granted; judgment affirmed.